FRANCIS E. WHITLEY, Appellant, v. GEORGE JOHNSON ET AL., Appellees.

**Evidence:** TRANSACTIONS WITH A DECEDENT. A mortgagee is incompetent under Code, section 4604, to testify to a conversation with a deceased mortgagor which led up to the execution of the mortgage.

**Mortgages:** AFTER-ACQUIRED TITLE. Where the owner of a life estate mortgages the fee and subsequently as sole heir of the remainderman acquires the absolute title, the lien in the absence of intervening equities attaches to the entire estate.

*Appeal from Hamilton District Court.*— HON. J. H. RICH-ARDS, Judge.

WEDNESDAY, OCTOBER 23, 1907.

ACTION in equity to foreclose a real estate mortgage. The plaintiff was denied the relief prayed, and he appeals.— *Reversed.*

*Wesley Martin,* for appellant.

*G. F. Tucker* and *D. C. Chase,* for appellees.

BISHOP, J.— A statement of the issues seems necessary to an understanding of the situation. The petition declares upon a note and mortgage executed to plaintiff by Lucy H. Johnson,— the mortgage covering one and one-half lots in Webster City. There is then an allegation of the death of Mrs. Johnson, and that she left surviving her as her sole and only heir at law the defendant George Johnson; further, that the defendant Charles Harris claims some interest in the mortgaged property. It is then alleged that whatever interest either of said defendants may have it is inferior to the lien of plaintiff's mortgage. The defendant Harris alone appeared. Pleading to the petition, he set up that in October, 1898, he was duly appointed guardian of the person and estate of Lucy H. Johnson, who then was, and for a long time prior — including the date of plaintiff's pretended mortgage — had been, an insane person. He denied on information and belief the existence of a note and mortgage as declared upon by plaintiff, but says that, if such was executed, it was not only without consideration, but was void for want of mental capacity to execute on the part of said Lucy H. Johnson. In an amendment to his answer said defendant pleaded full ownership in himself of the mortgaged premises in virtue of a deed executed to him by George Johnson.

The facts made to appear on the trial may be stated in substance as follows: On September 2, 1897, the premises in question were owned by Lucy H. Johnson, an aged widow, and had been occupied by herself and an aged un-

married daughter, Julia Johnson, as a homestead for many years. On the day named Mrs. Johnson executed a conveyance of the premises to her said daughter Julia. The instrument recited a consideration, and contained general covenants as to title, etc. There was then this provision: "This deed is made upon the consideration that the grantee cares for the grantor during the life of the said grantor, and, in case of the failure of the grantee to so care for the grantor, this deed shall be void. The grantor reserves a life estate in the above premises." It does not appear that this deed was ever made a matter of record. Following such deed, the occupancy of the premises continued as before down to the death of the daughter, Julia, which occurred August 17, 1898. Thereafter Mrs. Johnson occupied alone down to her death, which occurred September 7, 1899. The mortgage to plaintiff in question bears date August 13, 1898, and is in general terms and contains the covenants usually found in such instruments. Julia died intestate, as did also Mrs. Johnson.

On its face, the mortgage purports to secure a note of even date given for payment of $184.60. And it is the contention of plaintiff that said note was given in liquidation of an account for professional services rendered by him as a physician — in part to Julia, and in part to Mrs. Johnson — amounting to $134.60; that the additional sum of $50 was included in the note and mortgage when drawn pursuant to an arrangement, whereby plaintiff was to advance and loan Mrs. Johnson and Julia jointly money in that sum. It is admitted by him that the loan was not made, and it appears that shortly after taking the note he indorsed thereon a credit in the sum of $50. What was the preliminary agreement leading up to the execution of the mortgage by Mrs. Johnson we are not advised. The plaintiff testified on the subject, but over objection that he was not a competent witness under the statute. Code, section 4604. And, as we

1. EVIDENCE:
transactions
with a
decedent.

think the objection was well taken, we cannot consider his testimony.

It appears, however, that plaintiff did not know that the legal title to the property was in the daughter Julia, and that the interest of the mother was no more than a life estate. He testified that his information went no further than that they were both interested in the property. It also appears that plaintiff caused the note and mortgage to be prepared in advance, and that, as prepared, the same were intended to be executed by both Mrs. Johnson and Julia. He then took with him a notary public, and went to the Johnson home to secure execution and acknowledgment. They first entered the room occupied by Mrs. Johnson, and the notary testifies that the contents of the instruments were explained to her by him. It does not appear that she said anything other than to ask as to such contents. She was in bed at the time, and was propped up and given a pen with which she affixed her signature to the note and mortgage. Plaintiff and the notary then went to another room to the bedside of Julia. There they found the defendant Harris, and, on the purpose of the visit being stated, the latter said to Julia that the account of plaintiff was untrue and unfair, and that she did not need to borrow money, as she already was possessed of sufficient to satisfy her needs. Acting on his advice, Julia refused to sign, whereupon plaintiff and the notary went away, taking with them the note and mortgage as signed by Mrs. Johnson, and, as far as appears, without further conference with her on the subject. Subsequently plaintiff made the indorsement on the back of the note, and, having erased all reference to Julia appearing in the mortgage, he placed the instrument of record.

As will readily be surmised, the contention of plaintiff in argument is that upon the death of Julia, her mother surviving her became possessed of the fee title to the property, and, invoking a familiar rule, that by operation of law the lien of the mortgage at once extended to the entire

estate; while, on the other hand, it is the contention of defendant that, in view of the prior deed from Mrs. Johnson to her daughter Julia, the mortgage to plaintiff, if valid at all, operated only to convey a life estate, which estate has since been terminated by the death of the holder; further, that the mortgage to plaintiff did not have effect to attach to the estate in fee cast upon Mrs. Johnson by inheritance on the death of her daughter Julia, but that such estate on the death of Mrs. Johnson descended to and became the sole property of the son George Johnson. The court found against the contention of defendant for mental incapacity on the part of Mrs. Johnson, but took the view — and so decreed — that, under the peculiar circumstances of the case, all rights of plaintiff under his mortgage ceased upon the termination of the life estate; that the lien of such mortgage was not extended by operation of law to cover the fee title when that came to be cast upon Mrs. Johnson on the death of her daughter. To begin with, counsel for appellee insists that a wrong conclusion was reached on the fact issue of mental incapacity. We cannot say that this is so. It was an open question under the evidence, and the court below had the advantage of having the witnesses present in person, and could observe, as we cannot, their demeanor, and their intelligence, and truthfulness as far as the personal presence of witnesses and their manner of testifying can furnish evidence thereof. We have often said that this must be given weight by us in passing upon disputed questions of fact, and we will not reverse unless our reading of the record makes it clear — all things considered — that a wrong conclusion has been reached.

Coming to the second matter of contention, it is true as a general rule that, where one being possessed of less than the fee title to land assumes to make conveyance as of the 2. MORTGAGES: after acquired title. fee, title thereafter acquired by the grantor will inure to the benefit of his grantee. And this is a rule of the statute, as well as of the cases. Code,

section 2915; *Rice v. Kelso,* 57 Iowa, 115; *Trust Co. v. King,* 58 Iowa, 598. It is universally agreed that the rule is founded on the doctrine of estoppel. It has its root in good conscience, and, as applied to covenants in a deed, solemnly made, it is intended to forbid the grantor who has subsequently acquired an outstanding title from belittling or destroying the effect of his covenants by asserting such title as against his grantee or his privies. Thus it is said by Mr. Bigelow: " This after-acquired title of the grantor ' inures,' it is usual to say, by estoppel to the benefit of the grantee. It would perhaps more accurately state the situation, under our modern deeds of conveyance, to say that the deed which the grantor engages to warrant and defend is a solemn stipulation that the grantor has the title which he is now about to transfer to the grantee as a purchaser for value. In the face of this he cannot be heard to say, after making the transfer, that he had not that title at the time. So his new title lies lifeless in his hands against such purchaser." Bigelow on Estoppel (5th Ed.), 384. This being the rule, what reason can there be for not giving it application to the case as made by this record? It is true that the purpose of all estoppels is to prevent duplicity and inconsistency, and to prevent parties, and those in privity with them, from unsettling what has been fittingly settled or determined. And it may be conceded that in equity the rule will not be given application to defeat the proven contract agreement of the parties, either as made in express terms or to be fairly implied from the circumstances under which the instrument of conveyance was made. Nor, in general, will it be given effect to defeat intervening equities. But here we have the bare fact that the mortgage was presented to Mrs. Johnson for her signature, and that, without deception as to the terms and provisions thereof, she signed and acknowledged. And that this was done, as shown by the facts, on consideration cannot be doubted. So, also, there are no intervening equities. The rights

possessed by defendant are the rights possessed by Mrs. Johnson at the moment of her death. And no third person is here claiming to be interested in the matter in suit. Moreover, there is no allegation of mistake as in *Cook v. Prindle*, 97 Iowa, 464, a case relied upon by defendant. Reformation of the instrument of mortgage is not insisted upon, and we are not asked to consider whether or not the refusal on the part of Julia to execute the note and mortgage had effect to invalidate the instrument in the hands of the plaintiff.

Taking the case as it is presented to us, we think the contention of plaintiff for a lien upon the entire property must be sustained. From this it follows that the decree entered by the trial court must be, and it is reversed, and the cause ordered remanded, with directions to enter a decree in harmony with this opinion.— *Reversed.*