[S. F. No. 5796.   Department One.—August 9, 1912.]

HENRY S. BRIDGE and CARRIE E. BRIDGE, Respondents, v. MARTIN KEDON, Jr., Appellant.

ASSIGNMENT OF EXPECTANCY BY HEIR—EQUITY WILL ENFORCE AFTER DEVOLUTION OF ESTATE—RULES OF LAW AND EQUITY.—Notwithstanding the provisions of sections 700, 703, and 1045, of the Civil Code, the courts of this state have recognized and applied the doctrine of equity that a conveyance or release by an heir of his expectancy in the estate of his ancestor, will, under some circumstances, be enforced against his share of such estate, after it has devolved upon him by the death of the ancestor. Those sections of the code do not charge the pre-existing rules of equity on the subject, but merely declare the pre-existing rules of the law relating thereto.

ID.—EQUITABLE ASSIGNMENTS OF FUTURE INTERESTS—APPLICABILITY OF RULE TO VESTED INTERESTS AND TO MERE POSSIBILITIES.—The California cases recognize the rule as a general one that equity will uphold assignments, not valid in law, of any future interest, as a rule applying alike to those which are vested, but relate to property to come into existence in the future, and those which rest only in possibility, provided they are fairly made and not against public policy.

ID.—ENFORCEMENT OF ASSIGNMENT IN EQUITY—CONSIDERATION—PUBLIC POLICY.—A mere expectancy, such as that of an heir in the estate of his ancestor, is assignable in equity for a valuable consideration; and when the expectancy has fallen into possession, the assignment, in whatever way it may come before the court, will be upheld and enforced, if founded upon a valuable consideration and not contrary to public policy, to the extent that it is fair and reasonable.

ID.—ASSIGNMENT ONLY ENFORCEABLE SO FAR AS REASONABLE—EXORBITANT INTEREST WILL BE REDUCED.—Where the consideration for such an assignment is a loan and the interest is exorbitant, or the terms unconscionable, the courts will compel each party to do equity. The assignee, on the one hand, will be allowed to enforce his equitable charge on the property only to the extent of the sums actually advanced and reasonable interest; and the heir, on the other hand, will be given a decree setting aside the assignment only upon the condition that he shall repay the sums advanced, with interest and costs.

ID.—PRESENT EQUITABLE CHARGE CREATED BY ASSIGNMENT AS SECURITY FOR LOAN—LIEN ATTACHES WHEN DESCENT IS CAST.—Upon the execution of such an assignment by the heir, as security for a loan, there is created a present equitable charge on the property, which

equity recognizes as vested, although it is neither vested nor valid at law, and which, when the descent is cast, at once ripens into a lien upon the property for the security of the money loaned.

Id.—Equitable Assignment Valid Against Assignor in Bankruptcy —Effect of Discharge in Bankruptcy.—As a general rule, an assignment, invalid at law but good in equity, is valid in equity against the assignor in bankruptcy, whether the thing is assigned absolutely or only as security for a debt. In the latter case, the discharge in bankruptcy terminates the legal personal obligation to pay the debt, and the right granted or assigned is limited to the enforcement of the payment of the money loaned, with interest, out of the property which is the subject of the grant or assignment.

Id.—Personal Liability for Debt not Necessary to Equitable Charge.—The continued existence of the debt as a personal obligation to pay money, is unnecessary to the enforcement of an equitable charge or lien upon specific property.

Id.—Lien Created by Assignment Preserved by Bankrupt Act— Enforcement After Discharge in Bankruptcy of Assignor.— The lien created by such an assignment, if made more than four months before the filing of a petition to have the assignor adjudged a bankrupt, was preserved by section 67 of the Bankrupt Act of 1898, and the discharge of the assignor in bankruptcy, prior to the descent being cast, did not divest the assignee of his existing equitable charge on the assignor's prospective inheritance, or of his right to subsequently enforce it against the property after it had come into the assignor's possession.

Id.—Assignment Enforceable in Equity Notwithstanding Inequitable Features—Unconscionable Interest will be Reduced.— The existence of inequitable or unconscionable features in connection with such grants or assignments does not prevent their enforcement in equity so far as they are just and equitable; and if such an assignment is given as security for a loan, bearing an unconscionable rate of interest, the court will allow only such interest as is just and fair.

Id.—Consent of Ancestor not Essential to Assignment.—It is not necessary to the enforcement of such an assignment in equity, that at the time it was executed it was approved or consented to by the ancestor.

Id.—Assignee Need not be One Having Interest in the Property.— It is not essential to the validity of such an assignment that it be made to one who already has some interest in the property or some possibility of an interest, as, for example, a coheir or one of the ancestors.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Cushing & Cushing, and Wm. S. McKnight, for Appellant.

Thomas E. Haven, for Respondents.

SHAW, J.—The appeal is from the judgment.

The plaintiff sued to enforce a grant or assignment of the expectant interest of the appellant in the estate of his mother, who was then living, to Henry S. Bridge as trustee. Apparently he was trustee for Carrie E. Bridge, and for that reason she is made a party plaintiff, although she was not named in the assignment. It was made as security for the payment of certain sums of money loaned by Bridge to the appellant, for which he executed four notes amounting to fourteen hundred dollars. Prior to the death of his mother, Kedon was duly adjudged a bankrupt, under the United States Bankrupt Act of 1898, and was in said proceeding duly released and discharged from all debts and claims provable in bankruptcy, including the debts arising from said loans of Bridge to him and the notes given in consideration thereof. Three of the notes bore interest at the rate of two and a half per cent per month, the other at the rate of three per cent per month, in each case payable in advance and compounded monthly. Kedon's mother died on April 29, 1908, and a decree has been made distributing to Kedon, as one of her heirs, a share of her estate. It is against this share that the plaintiff seeks to enforce the assignment. At the specified rates of interest, there would have been due on these notes, at the time of the judgment below, something over eleven thousand dollars. The court below found that the rates of interest were exorbitant and that the contracts were to that extent unfair and unconscionable, and that simple interest of twelve per cent per annum would be a reasonable and fair amount to be allowed. This reduced the amount owing to Bridge to $2,905.95, which was adjudged to be a charge upon Kedon's share of his mother's estate. Kedon appeals.

The Civil Code provides that "a mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind." (Sec. 700.) Also: "No future interest in property is recognized by the law except such as is de-

fined in this division." (Sec. 703.) And, further: "A mere possibility, not coupled with an interest, cannot be transferred." (Sec. 1045.)

Notwithstanding these provisions, the courts of this state have recognized and applied the doctrine of equity that a conveyance or release by an heir, of his expectancy in the estate of his ancestor, will, under some circumstances, be enforced against his share of such estate, after it has devolved upon him by the death of the ancestor. In *Pierce* v. *Robinson,* 13 Cal. 123, the court, referring to proceeds of future crops, said that equity will uphold assignments of things which have no present existence, but rest in possibility, that "an agreement for such interests will take effect as such assignment when the subjects to which they refer have ceased to rest in possibility and have ripened into reality," if fairly made and not against the policy of the law. Similar statements regarding assignments of things not yet existing are made in *Bibend* v. *Liverpool etc. Ins. Co.* 30 Cal. 80, 86, and *Bergson* v. *Builders' Ins. Co.,* 38 Cal. 541, 544, in which the right to the money due upon a fire insurance policy assigned as collateral security before the loss occurred was involved. In *Estate of Garcelon,* 104 Cal. 570, [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414]; Merritt, a nephew of the deceased Catherine Garcelon, had, for an adequate consideration and with full knowledge of all the facts, made an agreement with his aunt, whose heir apparent he then was, that he would not assert any right or interest as heir in or to certain of her property, except such as she might give him by her will, and that he would not dispute or question any disposition thereof which she might make by her deed or will. This was said to be, in effect, a release by him to her, of his expectancy in that part of her estate to which it related. It was held that the agreement was not contrary to public policy, that it was valid, and that Merritt was thereby estopped from maintaining a contest of his aunt's will. The case involved only the effect of the agreement that he would not contest the will. But the court said that the release of his expectancy was valid and that the sections aforesaid, 700 and 1045 of the Civil Code, merely declare the rule of law and did not affect or change the doctrine of equity on the subject of equitable assignments of expectant estates. The question was carefully considered and the conclusion clearly

announced. In *Estate* of *Wickersham,* 138 Cal. 362, [70 Pac. 1076, 71 Pac. 437], the court stated the doctrine that such a contract, made on adequate consideration and otherwise unobjectionable, would be enforced in equity "as an agreement to convey, or by way of estoppel or otherwise," but this, the court said, was not material to the case. The Garcelon case was cited with apparent approval. In *Estate of Ryder,* 141 Cal. 370, [74 Pac. 993], it was held that a conveyance of his expectancy by an heir apparent is not such a conveyance of the legal title as will enable the grantee therein to obtain distribution as grantee of the heir under section 1678 of the Code of Civil Procedure. Again the Garcelon case was cited with apparent approval. It was not necessary in the Ryder case to determine further the effect of such conveyance, or the rights of the parties thereto between themselves.

The Garcelon case must be taken as establishing the proposition that the Civil Code does not change the pre-existing rules of equity on the subject, but merely declares the pre-existing rules of law relating thereto. Specifically, the case decides that an heir may, by contract with his ancestor, if not with others, bind himself to refrain from contesting the will of such ancestor. The specific question of the effect of an assignment of an expectant interest by an heir has not been actually involved in any other California case. We must therefore look to general principles, established by the decisions which gave rise to the equity doctrines on the subject, for a guide to our decision.

There is sometimes mentioned a distinction between assignments of property or rights not existing at the time, but which will or may issue as the result of the performance of an existing contractual relation or of an existing executory contract, as, for example, future crops under an existing tenancy, wages not earned under an existing employment, or money payable on an insurance policy in case of a loss, these being of the class considered in the California cases first above cited, that is, possibilities coupled with a present interest, and a grant or assignment by an heir apparent of his expectancy, in which he has no present estate or interest. Mr. Pomeroy mentions this in his work on Equity Jurisprudence. (Vol. 3, sec. 1286.) The California cases relating to contingent results of existing contracts do not refer to such distinction and they state

CLXIII Cal.—32

the rule as a general one that equity will uphold assignments, not valid at law, of any future interest, as a rule applying alike to those which are vested, but relate to property to come into existence in the future, and those which rest only in possibility, provided they are fairly made and not against public policy.

The general rule in equity is well established. Mr. Tudor, the author of Notes to White & Tudor's Leading Cases in Equity, says: ''A mere expectancy, as that of an heir at law to the estate of his ancestor (*Hobson* v. *Trevor,* 2 P. Wms. 191; *Wethered* v. *Wethered,* 2 Sim. 183, 192; *Smith* v. *Baker,* 1 Y. & C. C. C. 229), or the interest which a person may take under the will of another then living (*Beckley* v. *Newland,* 2 P. Wms. 182; *Bennett* v. *Cooper,* 9 Beav. 252; *Flower* v. *Butler,* 15 Ch. Div. 665), or the share to which such persons may become entitled under an appointment (*Musprat* v. *Gordon,* 1 Anst. 34), or in personal estate as presumptive next of kin of a person then living (*Hinde* v. *Blake,* 3 Beav. 235; *Meek* v. *Kettlewell,* 1 Ph. 347), is assignable in equity for a valuable consideration; and when the expectancy has fallen into possession, the assignment will be enforced.'' (Pt. 2, vol. 2, p. 839.) The cases cited support the text. The numerous cases cited in the extensive note show that the validity of such assignments may be presented either in a suit by the assignor to set aside the assignment, or in a suit by the assignee to enforce it, but that in whichever way it may come before the court, if it is founded upon a valuable consideration and is not contrary to public policy, it will be upheld and enforced to the extent that it is fair and reasonable.

The cases referred to as contrary to public policy are those involving champerty, assignments of salaries, pensions, and the like. Nothing of the kind is presented in this case and this qualification need not be considered. In regard to the consideration, the decisions are to the effect that where it is a loan and the interest is exorbitant, or the terms unconscionable, the courts will compel each party to do equity. The assignee, on the one hand, will be allowed to enforce the equitable charge on the property only to the extent of the sums actually advanced and reasonable interest; and the heir, on the other hand, will be given a decree setting aside the assignment only upon the condition that he shall repay the

sums advanced, with interest and costs.   (Id., part 2, vol. 1,
pp. 678, 692.)   It is said that the doctrine ''was independent
of the laws of usury and it was in force before the statutes
relating to usury came into existence.''   (Id., part 2, vol. 1,
p. 687.)   Mr. Pomeroy says that ''possibilities not coupled
with an interest—mere possibilities or expectancies . . . are,
according to the general course of decisions, assignable in
equity for a valuable consideration; and equity will enforce
the assignment when the possibility or expectancy is changed
into a vested interest or possession.''   (3 Pomeroy's Equity
Jurisprudence, sec. 1287; see, also, 2 Story's Equity Juris-
prudence, 13th ed., sec. 1040a.)   We do not find in any of the
decisions or in any of the authorities any difference between
the rule as applied to the assignment of property not exist-
ing, but which will be the product or result of an existing con-
tract or contractual relation, and assignments of a mere
possibility such as that of, an heir in the estate of his living
ancestor, at least so far as the right in either case to enforce
such an assignment in equity is concerned.

Under these authorities, there can be no doubt that the grant
or assignment of Kedon to Bridge of his expectancy as se-
curity for the loan was valid to the extent of the sum loaned
and reasonable interest thereon, and that it may be enforced
against the part of his mother's estate which on her death de-
scended to Kedon, unless it is barred by the discharge in bank-
ruptcy.

When we look to the reasoning by which the rule is upheld
it is obvious that a discharge in bankruptcy does not invali-
date the charge or lien which equity imposes upon the prop-
erty.   Mr. Pomeroy, in explaining the general doctrine on
the subject and referring to assignments of expectancies as
well as other interests, says: ''The assignee of an expectancy,
possibility or contingency acquired at once a present equitable
right over the future proceeds of the expectancy, possibility,
or contingency which was of such a certain and fixed nature
that it was sure to ripen into an ordinary equitable property
right over those proceeds as soon as they came into existence
by a transformation of the possibility or contingency into an
interest in possession.   There was an equitable ownership of
property in abeyance, so to speak, which finally changed into
an absolute property upon the happening of the future event.''

(3 Pomeroy's Equity Jurisprudence, sec. 1271.) And with regard to bankruptcy, in section 1291 he says: ''According to the general doctrine of equity established beyond any doubt by the highest judicial authority, the equitable assignment or the equitable lien upon the property to be acquired in the future is valid and enforceable, not only against the contracting party himself, but also against subsequent judgment creditors, assignees in bankruptcy, and all other volunteers holding or claiming under him, and against subsequent purchasers from him with notice of the assignment of lien.'' As we understand the theory, as stated in section 1271 aforesaid, it is that as soon as the assignment is executed the assignee becomes vested of an equitable right to receive the property ultimately, a right which, by the rules of equity, is sure to become an ordinary vested property right when the event occurs by which the possibility is realized as a certainty. He does not mean to say that the possibility by which the estate becomes an estate of the heir in possession is sure to happen, but that if it does happen the equitable right is then sure to ripen into an ordinary property right. The language has been criticised in some cases which attribute to this passage the contrary meaning, that it was the possibility which was sure to ripen into an ordinary property right in the assignee. (*McCall* v. *Hampton,* 98 Ky. 166, [56 Am. St. Rep. 335, 33 L. R. A. 266, 32 S. W. 406].) In the case of a loan, according to these principles, there is created by the assignment a present equitable charge on the property, which equity recognizes as vested, although it is neither vested nor valid at law, and which, when the descent is cast at once ripens into a lien upon the property for the security of the money loaned.

This being the nature of the equitable right created by the assignment, it would follow, in analogy to the rule concerning ordinary liens, that the discharge in bankruptcy did not divest Bridge of his then existing equitable right to Kedon's prospective inheritance. The general rule is well established that an assignment, invalid at law but good in equity, is valid in equity against the assignor in bankruptcy, whether the thing is assigned absolutely or only as security for a debt. In the latter case, the discharge in bankruptcy terminates the legal personal obligation to pay the debt, and the right granted or assigned is limited to the enforcement of the payment of the

money loaned, with interest, out of the property which is the subject of the grant or assignment.    (3 Pomeroy's Equity Jurisprudence, sec. 1291; 5 Am. & Eng. Ency. of Law & Prac., p. 963.)    The assignment is treated in equity as a present contract to convey the future interest, a contract which creates a trust as soon as the interest becomes absolute, and this is a present existing right by contract which the discharge in bankruptcy does not avoid or terminate.    The continued existence of the debt as a personal obligation to pay money, is unnecessary to the enforcement of an equitable charge or lien upon specific property.    In *Fletcher* v. *Morey,* 2 Story, 555, [Fed. Cas. No. 4,864], and *Parker* v. *Muggridge,* 2 Story, 345, [Fed. Cas. No. 10,743], it was held that the Bankruptcy Act of 1841 excepted from its operation specific equitable liens and charges, as well as legal liens, and that an equitable charge could be enforced against the assignee in bankruptcy.    This was put upon the ground that "every such agreement for a lien or charge *in rem* constitutes a trust" which binds the conscience of the assignor.    It is said further that the act "was by no means intended to affect any of the equitable liens or other equitable claims of parties, arising under their contracts," and that "the property will be followed and affected with the trust in the hands of the assignee (in bankruptcy) in the same manner and to the same extent as it would be in the hands of the bankrupt."

The Bankrupt Act of 1898 expressly exempts from its operation and preserves all liens created by the bankrupt in good faith and for a valuable consideration more than four months before the filing of the petition in bankruptcy.    (Bankrupt Act, sec. 67; 5 Cyc. 364.)    The act is in this particular identical with the Bankrupt Act of 1841, [5 Stats. 440, c. 9], and the above decisions apply to it with equal force.    It is scarcely necessary to say that if such an equitable charge *in rem* can be enforced against the assignor in bankruptcy it must necessarily be enforceable against the bankrupt himself after his discharge, and especially in cases where the property which is subject to the charge did not get into the possession of the assignee because at that time it had not been acquired by the bankrupt.

The suggestion that the plaintiff cannot prevail because equity will not enforce unfair or inequitable contracts, is an-

swered by the fact that, by the refusal to allow the stipulated rate of interest, the court has eliminated the unfair and inequitable elements of the transaction. In doing this it did not make a new contract for the parties; it merely enforced the performance of the contract so far as it was just and fair. An examination of the cases in which the assignments of expectancies have been upheld and enforced, discloses that the court has almost invariably deducted exorbitant interest or other unconscionable charges imposed on the necessitous heir at law, and has enforced the charge only to the extent that it was just, fair, and reasonable. The existence of inequitable or unconscionable features does not prevent the enforcement of the grant or assignment so far as it is just and reasonable. It is claimed that such assignments are not enforced in equity, unless at the time they were executed they were approved or consented to by the ancestor. In suits to set aside such an assignment for fraud or inadequacy of consideration such consent or want of consent by the ancestor is usually referred to as a material fact bearing upon the fraud or inadequacy, but an examination of the cases shows that this circumstance does not avoid the assignment but is merely evidence relating to the cause of action, and that when the assignment is set aside it is only upon the condition that the real consideration is repaid with interest. It is also suggested that an assignment will not be valid except when it is made to one who already has some interest in the property or some possibility of an interest, as, for example, a coheir or one of the ancestors. We have found no case in which this doctrine has been announced. On the contrary, a very large number of the cases in which such assignments have been enforced are cases where the assignment was made to an entire stranger both to the family and to the estate.

Our conclusion is that the court below did not err in allowing the enforcement of plaintiff's claim to the extent that it was equitable, fair, and reasonable. It is not claimed that the findings as to what was a fair and reasonable rate of interest under the circumstances are contrary to the evidence.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.