JOHN HINTZ et al., Appellees, v. JOSEPH A. HINTZ et al.,
Appellants.

**DEEDS: Delivery—Evidence—Insufficiency.** Evidence reviewed, and
1  held insufficient to show grantor's intent to make delivery of a
deed though in the possession of grantee.

**WITNESSES: Competency—Transaction With Insane—Removal of**
·2  **Disqualifications.** Testimony by a guardian of an insane person
as to a certain communication concerning a certain subject mat-
ter, made by the insane person to the witness, does not remove
the incompetency of the defendant to testify to *other* and *different*
communications made by the insane person to him (defendant),
even though concerning the same subject matter. (Sec. 4604, Code,
1897.)

PRINCIPLE APPLIED: The guardian of an insane ward, in
an action to set aside the deed of his ward because of non-
delivery of the deed, testified that, when the grantor executed the
deed, he (the grantor) directed his banker to put the deed among
his papers, saying, in substance, that he (grantor) would keep
the same in his possession during his lifetime. The defendant,
grantee in the deed, then attempted to show what the grantor
said to him (grantee), several weeks after the deed was executed.
concerning the delivery of the deed. *Held*, the former testimony
did not remove the defendant's incompetency to testify to the
latter.

**WITNESSES: Competency—Transaction With Insane—Removal of**
3  **Disqualifications.** A guardian, simply testifying as to what the
defendant had said to him about a transaction with the guar-
dian's insane ward, does not thereby render the defendant com-
petent to testify to such transaction.

**MORTGAGES: Action to Annul—After-Acquired Interest.** A mort-
4  gage, without lienable quality when executed, because of grantor's
utter lack of title, attaches to grantor's subsequently acquired
interest. (See Sec. 2915, Code, 1897.)

*Appeal from Adair District Court.*—J. H. APPLEGATE, Judge.

MONDAY, MAY 15, 1916.

THIS action was begun by Michael Hintz, October 6, 1913,

alleging that a certain deed signed and acknowledged by him, purporting to convey three lots in Stuart to his son, Joseph A. Hintz, though recorded, had never been delivered, and that said defendant had never complied with the conditions therein, and praying that the same, together with a mortgage executed by the grantee to the Stuart Savings Bank, be set aside and canceled.   The allegations as to delivery and performance were put in issue by the answer.   On petition of Joseph A. Hintz, W. J. Taylor was appointed guardian of plaintiff and, on February 22, 1914, was substituted as party plaintiff.   Hearing was had; but before decision, Michael Hintz died, and John, E. D., Charles, Frank, and Marie Hintz, children of decedent, were substituted as parties plaintiff and directed to make the remaining children, Henry and Michael Hintz and Minnie Snell, parties defendant.   The relief prayed was granted, and defendants Joseph A. Hintz and the Stuart Savings Bank appeal.   *Modified* and *Affirmed.*

*R. H. Dosh* and *Carl P. Knox,* for appellants.

*F. O. Hinkson* and *H. J. Chapman,* for appellees.

LADD, J.—The decedent, Michael Hintz, was living alone in 1911, his wife having died several years before, and, after negotiating with his son Joseph, whom we shall hereafter refer to as defendant, arranged with him to live

1. DEEDS: delivery: evidence: insufficiency.

with and care for his father; and the terms of their agreement, at least in substance, were embodied in a deed purporting to convey three lots in Stuart to defendant, which the decedent signed and acknowledged, in words following:

"It is expressly agreed by and between the parties hereto that the said Joseph A. Hintz is to care for and provide a home for the said Michael Hintz for the period of his natural life, and at the death of the said Michael Hintz, the above described real estate is to be the property of the said Joseph

A. Hintz, in full payment for such services rendered the said Michael Hintz.''

This was September 18, 1911, and the evidence shows that defendant remained with his father, a part of the time at least, thereafter. About the 1st of May, 1913, decedent, when alone at his house, was stricken with paralysis; and, after remaining alone in a helpless condition about a day and two nights, was taken to the local hospital. On the following day, defendant obtained the deed, with other papers, from his father's trunk, and, a few days later, caused it to be filed for record. The controlling issue is whether the deed was ever delivered to the grantee named therein. Possession of the deed by defendant was prima-facie evidence of delivery (*Parlin v. Daniels*, 111 Iowa 640, 642), and the burden was on plaintiff to overcome this inference. *Corbin v. McAllister*, 144 Iowa 71. Whether there was a delivery depends largely on the intent of the grantor, and this is to be gathered from the facts and circumstances surrounding the transaction. W. J. Taylor, guardian of the grantor, testified that, the day after deceased was taken to the hospital, defendant ''brought up a package of different kind of papers, consisting of some mortgages, old deeds, notes, certificate of deposit for money, and a deed from Michael Hintz to his son Joe, and Joe told me that his father had told him to get these papers and put them in a safe place, and Joe brought them up and left them with me. Joe said he had found $385 in cash in his father's trunk. I put all of the papers in my safe for Joe for safe keeping, and Exhibit 'A' is one of the papers that Joe brought and left with me, and at that time Exhibit 'A' had not been recorded. . . . Some time afterwards, he came up and wanted to borrow the deed, Exhibit 'A;' said he wanted to take it up to Mr. Knox and have him examine it; he said he would bring it back in a few minutes; simply said he wanted to take it up to Mr. Knox to examine it; that he wanted to see it. He came back in probably a half hour and said Mr. Knox advised him to put the deed on record. I said, 'Joe,

I would not do that if I were you; your father did not intend that you should have that deed during his lifetime;' he said his attorney, or Mr. Knox, whichever it was he called him, advised him to put it on record and he would do it.

"I drew the deed, Exhibit 'A.' At the time I drew the deed, he said that he was going to make a deed to Joe for the property and that Joe was to take care of him during his declining years, or something to that effect, during his lifetime, and was to have the property at his death. After I had drawn the deed, he wanted me to go with him to have it acknowledged; we went to the First National Bank; Curtis took the acknowledgment; and he told Mr. Curtis in my presence, 'You put this deed in my box with my other papers; I will keep that in my own possession, and when I am gone they will find it.' I referred to that when I told Joe he ought not to put it on record because his father did not intend he should have it. . . . Joe said, 'Well, if he lives and wants the property back, I will deed it back to him at any time.' At that time, Joe did not claim that it had been delivered to him or anything of that kind, or that the old gentleman had told him to go and get it and record it. During the conversation with Joe with reference to the deed, when he came and got it and when he came back, after he had taken it to Knox, he did not claim that his father had delivered it to him or told him to go and get it. I have never had possession of the deed, Exhibit 'A,' since Joe borrowed it to show to his attorney."

The defendant testified to conversations with his father, subject to rulings on objections as to his competency under Section 4604 of the Code, to the effect that deceased withdrew all his papers from the bank in the fall of 1911, and upon his return home gave him the deed, saying that it was his; that defendant remarked that he had no place for it and handed it back, whereupon decedent said, "All right," and cautioned him against recording it, because

2. WITNESSES: competency: transaction with insane: removal of disqualifications.

of the influence this would have on the children.   Counsel for appellant concede that, but for the testimony previously quoted, the objection to this evidence must be sustained.   The above section declares:

"No party to any action or proceeding . . . shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, insane or lunatic, against . . . the guardian of such insane person or lunatic.   But this prohibition shall not extend to any transaction or communication as to which any such . . . guardian shall be examined on his own behalf or as to which the testimony of such . . . insane person or lunatic shall be given in evidence."

It is argued that Taylor testified concerning the same transaction or communication with the decedent, and therefore objection to defendant's competency was obviated by the last clause of this statute.   As there stated, the prohibition against defendant cannot be extended to any communication or transaction concerning which the guardian spoke; but as to every other, the law, in the contingency appearing, has silenced him.   *Clarity v. Sheridan,* 91 Iowa 304; *Luehrsmann v. Hoings,* 60 Iowa 708; *Boardman v. Brown,* 114 Iowa 678. Though Taylor spoke of what occurred at the time the deed was acknowledged, he made no reference to the alleged talk weeks subsequently, when defendant and his father only were present.   Clearly enough, the above evidence must be excluded.

Again, defendant testified, subject to the same objection:

"The following morning after my father was taken to the hospital, he told me to go down and get the deed, Exhibit 'A,' and place it on record.   He said if I didn't do this before he was gone, it wouldn't be any good and he was afraid the rest of the children would take the property away from me."

3. WITNESSES: competency: transaction with insane: removal of disqualifications.

On cross-examination, he swore that his father told him to go and get the papers and

take care of them, and that this accounted for taking them to
Taylor, and that he did not tell Taylor that the deed belonged
to him nor say to him that, if his father was dissatisfied, he
would convey back to him.   Taylor had said nothing concern-
ing this conversation with decedent.   He had merely related
what defendant had said his father had told him.   This was
not testimony of a communication between him and the insane
father, but with defendant, and the objections to the com-
petency of the witness must be sustained.   *Bailey v. Keyes,*
52 Iowa 90, holding that executors, by relating facts from
which an agreement may be implied, remove the prohibition
against a defendant testifying to the agreement as made,
manifestly is not in point; nor is *Ridler v. Ridler,* 103 Iowa
470, based on that case.   Nor does *Campbell v. Collins,* 133
Iowa 152, upon which some reliance seems to be placed, lend
support to appellants' contention; for there the holding was
merely that the statute was not designed to exclude evidence
not itself obnoxious to the prohibition of the statute, but from
which an inference of what was done between the parties may
be drawn.   Aside from the evidence referred to above was
that of a neighbor asking for water from the well on the dis-
puted premises, to whom decedent had said, ''Ask the boy,
Joe, he owns the place;'' and of another, that decedent told
him he had deeded the property to his son Joe, and that he
was getting it fixed up nice for Joe.   Mrs. Covey, who cared
for him at the hospital, swore that, the morning after his
arrival, in a conversation concerning his neglected condition
before being brought there, he had said to her that defendant
''is to have this property in South Stuart for taking care of
me and all he has to do is to get that deed recorded.''

What he said to Mrs. Covey related to what was to be or
might be done thereafter.   The remarks to the neighbors may
be construed with reference to the arrangement as actually
made with defendant.   Certainly, in the light of the record,
they are not sufficient to show a conveyance of title.   Undoubt-
edly, decedent intended defendant to have the place if the

latter should comply with the conditions contained in the deed. But his statement that he would retain possession of the deed, immediately after it was acknowledged, evidenced an intention not to deliver during life; and this is strongly confirmed by the circumstance that it was found in his trunk by the defendant the day after he was stricken, and the proof that the latter was extremely negligent in attendance upon his father. Evidently he retained the deed under his control, and the defendant only obtained it when the grantor was in a helpless condition. Even then, he asserted no claim to it, but turned it over to Taylor for safe keeping. Nor did he claim it afterwards as of right, but borrowed it, and, contrary to his promise to return, recorded it. At no time did he claim the deed as having been delivered. The manner of acquiring possession was fully explained and, as we think, it was taken from the keeping of decedent without his knowledge or consent. It was never delivered, and therefore rightly set aside and cancelled of record. Having reached this conclusion, there is no necessity for inquiring whether defendant performed his part of the contract.

Exception is taken to the decree for that it cancelled the mortgage executed by defendant to his codefendant, the Stuart Savings Bank. This was given after he had borrowed the deed of Taylor, and prior to his father's death. On the latter event, he acquired by inheritance an undivided one-ninth interest in the property, and to this the mortgage attached. *Rice v. Kelso,* 57 Iowa 115; *Whitley v. Johnson,* 135 Iowa 620.

4. MORTGAGES: action to annul: after-acquired interest.

The decree will be modified so as to set aside and cancel the mortgage, in so far as it purports to incumber the interests of the heirs of decedent other than defendant. Four fifths of the costs taxed to the defendants, and remainder against plaintiff.—*Modified* and *Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.