MARY WALKER BISBY, Appellant, v. JOHN P. WALKER et al., Appellees.

**ESTOPPEL:** Subsequently Acquired Title. A *contingent* remain-
1  derman who mortgages the lands in question with warranty of title and seizin, or mortgages the lands without such warranty, but with the asserted intent in the mortgage to convey a fee, is estopped to deny that the subsequently acquired vested remainder inures to the benefit of the mortgagee, even though, after the execution of the mortgage, and prior to the vesting of said remainder, the mortgagor had been discharged in bankruptcy.

**REMAINDERS:** Nature and Incidents. Contingent remainders may
2  be mortgaged.

**BANKRUPTCY:** Liens Not Affected by Discharge. Bona-fide mort-
3  gage *liens* which antedate the filing of a petition in bankruptcy by four months are not affected by a discharge in bankruptcy.

**MARSHALING ASSETS AND SECURITIES:** Rule. A mortgagee
4  who is entitled to satisfaction from either of two tracts of land shall not so exercise his election as to exclude another and subsequent mortgagee who is entitled to resort to only one of said tracts.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

NOVEMBER 23, 1918.

REHEARING DENIED MARCH 17, 1919.

SUIT in partition resulted in an order for the sale of

the real estate, an order distributing same among the three tenants in common, and the satisfaction of four mortgages executed by one of them, Mary Walker Bisby, on her undivided one third thereof, from her portion of the proceeds. She appeals.—*Modified and affirmed.*

*Keithley & Bump* and *E. H. McCoy*, for appellant.

*Nichols & Nichols, Hager & Blough, A. L. Steele, George Harnagel, C. G. Lee, C. W. Garfield, C. C. Coyle,* and *Edwards, Longley, Ransier & Smith,* for appellees.

LADD, J.—William P. Bingaman died testate in 1888, seized of several tracts of land, and survived by his wife, Mary Bingaman, and daughter, Ellen Walker. After pro-

1. ESTOPPEL: subsequently acquired title. viding in the first clause of the will for the payment of debts, and in the second clause giving to his wife all of his property, real and personal, during her natural life, he disposed of the remainder, in the third clause, in words following:

"At the death of my said wife, or in the event that she should die before I do, I give, devise and bequeath all of my property, real, personal or mixed, to the children of my daughter, Ellen Walker, then living, in equal shares, to have and to hold the same forever, without right of alienation of any of the real estate, during the life of their mother, my daughter, Ellen Walker, and subject to the payment of the sum of one hundred dollars per year to my said daughter, Ellen Walker, during her natural life."

Ellen Walker died April 23, 1908, leaving surviving three children, John P. Walker, Harvey M. Walker, and Mary Walker Bisby. On August 22, 1911, Mrs. Bisby borrowed of J. B. Roszell $800, and executed to him her note for that amount, payable on or before five years from date, with interest; and on October 24, 1911, she executed her note to said Roszell for $700, payable five years from date,

with interest; and on the date of the note first mentioned, executed a mortgage to secure same, reciting that she does "hereby sell and convey unto said J. P. Roszell all our right, title and interest in and to the following described premises" (lands sought to be partitioned); and to secure the payment of the second note, executed a mortgage, wherein she did "hereby sell and convey unto J. B. Roszell" the premises described in the petition. Each of these mortgages contained a covenant that she was lawfully seized of the premises, that they were free from incumbrance, and that she had good right and lawful authority to sell and convey the same: that is, covenants ordinarily to be found in a warranty deed.

On July 15, 1912, she executed a promissory note to Althera Bales White for $710, payable on or before July 16, 1913; and, to secure payment thereof, executed a mortgage on the land described, reciting that she does "hereby sell and convey unto Althera Bales White" the land described, subject to the preceding mortgages, "the intention being to convey hereby an absolute title in fee simple, including all rights of homestead, to have and to hold the premises above described with all appurtenances thereunto belonging."

On December 12, 1912, she executed a promissory note to R. B. Thode for $400, payable six months after date, with interest, and executed a mortgage securing the payment thereof, therein reciting that she "does hereby sell and convey unto said mortgagee an undivided one third of the following premises" (describing those in suit, and covenanting that they are free from any incumbrance except as hereinbefore stated, and warranting and defending the title unto the mortgagee). This mortgage was made subject to those heretofore mentioned.

On March 8, 1913, she executed a promissory note to Richard F. Hodson for $2,100, with interest, payable five

days thereafter, and secured the payment thereof by the execution of a mortgage reciting that she "does hereby sell and convey unto the said mortgagee the following described premises" (here follows a description of the lands so conveyed), and covenanting that said "premises are free from any incumbrance and we will warrant and defend the title unto the said mortgagee, his heirs and assigns against all persons whomsoever lawfully claiming the same, except as above mentioned."

On July 9, 1913, Mrs. Bisby filed a voluntary petition in bankruptcy, and listed all her creditors, including the mortgagees named, and also listed her interest in the several tracts of land under the will; and the bankruptcy court determined that she had no interest in the real estate at that time, and that the trustee took no right, title, or interest therein; and thereafter, on June 1, 1914, she was discharged in bankruptcy.

The testator's widow, Mary Bingaman, departed this life December 27, 1915, and this suit for the partition of the several tracts of realty devised by the testator was begun by Mrs. Bisby on January 12, 1916. She alleged the facts to be as herein recited, and that the mortgages referred to were not claims or liens against the lands, and prayed that title to the undivided one-third interest in said realty be confirmed and quieted in her, free from all liens, and other equitable relief. Each of the mortgagees filed answer and cross-petition, setting up his respective mortgage, and praying that a lien thereof be established on plaintiff's interest in the realty, and foreclosed. On hearing, decree was entered, establishing title in each of the children of Ellen Walker to an undivided one third of the premises, and appointing W. M. Blough referee, with order to sell the property, which he did; and, after payment of the costs, two thirds of the proceeds of the sale were paid over to John P. Walker and Harvey M. Walker, and of the

proceeds, $4,795.21, together with rent amounting to $173.84, remain in the hands of the referee, subject to the ruling with reference to the mortgage claims mentioned. The court decreed later, on hearing, that the mortgages were liens on the proceeds of the sale against the several parcels of land in the order of their execution; that the mortgage of Thode was the first mortgage on the $173.84 rent money in the hands of the referee; and that the mortgage of Hodson, which had been assigned to L. C. Hodson, was a second mortgage on said rent; and that these amounts be paid from said funds; and that any remainder be paid to the plaintiff.

Appellant contends that the court erred in holding:

"(1) That the mortgages were valid liens upon the undivided one-third interest in the realty belonging to Mary Walker Bisby. (2) That the mortgages covered the rents and profits which had accrued after the death of the life tenant. (3) In holding that L. C. Hodson was owner of the mortgage. (4) In reforming the Hodson mortgage to cover all property, when the mortgage described only a part of it, and (5) In allowing attorneys' fees on each mortgage."

I. Were it to be conceded that, prior to the death of the life tenant, the mortgagor, Mrs. Bisby, held but a contingent remainder, it might be and was the subject of the several mortgages, and covered thereby. *McDonald v. Bayard Sav. Bank*, 123 Iowa 413. The mortgages, then, were valid when executed. If the remainder were to be adjudged contingent, the mortgages thereon, as they purported to convey the fee, with covenants of warranty, attached to and became a lien on the land upon the acquirement of title, when the contingency happened: that is, the death of the life tenant, there being no intervening equities. *Rice v. Kelso*, 57 Iowa 115; *Iowa L. & T. Co. v. King*, 58 Iowa 598; *Whitley v. Johnson*,

2. REMAINDERS: nature and incidents.

135 Iowa 620, 626. In the last-named case, the court pointed out that the rule rests on the doctrine of estoppel, and that:

"It is intended to forbid the grantor who has subsequently acquired an outstanding title from belittling or destroying the effect of his covenants by asserting such title as against his grantee or his privies."

The reason is concisely stated in Bigelow on Estoppel (5th Ed.) 384:

"This after-acquired title of the grantor 'inures,' it is usual to say, by estoppel to the benefit of the grantee. It would, perhaps, more accurately state the situation, under our modern deeds of conveyance, to say that the deed which the grantor engages to warrant and defend is a solemn stipulation that the grantor has the title which he is now about to transfer to the grantee as a purchaser for value. In the face of this, he cannot be heard to say, after making the transfer, that he had not that title at the time. So his new title lies lifeless in his hands against such purchaser."

The doctrine of estoppel, as thus applied, where the mortgage or deed contains a warranty of title and seizin, has the uniform approval of the authorities. The cases, however, are not as numerous where the deed or mortgage is without such warranty, but purports to pass an absolute title, as did the mortgage executed by Mrs. Bisby to the cross-petitioner, Mrs. Althera Bales White, her mortgage reciting the conveyance of the several tracts of land, and "the intention being to convey hereby an absolute title in fee simple." Having pledged the entire estate, the mortgagor will not be heard to say that only a contingent interest has been covered by the mortgage, instead of the entire estate, as pledged and as held by her at the time the contract is sought to be enforced.

"The rule is well established that, where the deed recites or affirms, expressly or impliedly, that the grantor

is seized of a particular estate which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to his vendee, although the deed conveys no covenant of warranty at all." *Reynolds v. Cook,* 83 Va. 817 (5 Am. St. 317) ; *Van Rensselaer v. Kearney,* 11 How. (U. S.) 297. In delivering the opinion in the last case, Nelson, J., said:

"If the deed bears on its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title, in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal cove- nant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance."

He then refers to and reviews a number of authorities, English and American, on the subject, and continues as follows:

"The principle deducible from these authorities seems to be that, whatever may be the form or nature of the con- veyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon

the estate and binds an after-acquired title as between parties and privies."

And the reason, he adds, is that such affirmation must necessarily have influenced the grantee in making the purchase; and hence, the grantor and those in privity with him, in good faith and fair dealing should be forever thereafter precluded from gainsaying it.

"The doctrine," he also added, "is founded upon the highest principles of morality, and recommends itself to the common sense and justice of everyone. And although it debars the truth in the particular case, and therefore is not infrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood, * * * and imposes silence on a party only when, in conscience and honesty, he should not be allowed to speak."

In *Lessee of French v. Spencer*, 21 How. (U. S.) 228, one Fosgit conveyed by deed purporting to convey the fee in a certain tract of land without warranty, to which he then had no title. Thereafter, a patent was issued in his name by the Federal government, under which he acquired the legal title. After his death, in an action to recover the land by one of the heirs against the heirs of his grantee, to whom, in the meantime, the land had descended, it was held that the plaintiff, claiming under the grantor, was estopped by the deed from disturbing the title or possession of the defendants, the court declaring that the "estoppel works upon the *estate* and binds an after-acquired title as between parties and privies." The doctrine of estoppel, then, is applicable as to each of the mortgages set up in the cross-petition, and the plaintiff cannot be heard to deny that the title subsequently acquired upon the death of the life tenant would not inure to the benefit of the mortgagees.

The operation of this estoppel is in no manner affected by the discharge in bankruptcy, as will appear. All the mortgages were executed more than four months prior to the filing of the petition in bankruptcy, and the *bona fides* of the several transactions is in no manner questioned. The only consequence of a discharge in bankruptcy is to suspend the right of action for a debt against the bankrupt person. If the creditors have a lien or equitable claim by mortgage or otherwise upon the property of the bankrupt, such right or rights remain unaffected. The independent collateral agreement given by way of security outlives the remedy on the debt which it was given to secure. Section 67-d, Bankrupt Laws, approved July 1, 1898 (U. S. Comp. St. 1901, p. 3449), provides that:

3. BANKRUPTCY: liens not affected by discharge.

"Liens given or accepted in good faith, and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."

Plainly enough, then, the liens of these mortgages were not affected by the bankrupt's discharge. *Mallin v. Wenham*, 209 Ill. 252 (65 L. R. A. 602, 101 Am. St. 233) ; *Citizens Loan Assn. v. Boston & M. R. Co.*, 196 Mass. 528 (82 N. E. 696) ; *Bridge v. Kedon*, 163 Cal. 493 (126 Pac. 149) ; *John Leslie Paper Co. v. Wheeler*, 23 N. D. 477 (137 N. W. 412, 42 L. R. A. [N. S.] 292, and note collecting cases at page 295). Nor did the discharge of the bankrupt obviate the attachment of the mortgages as liens on the after-acquired property. Subsequent to her discharge, she asserted her claim in and to the property which the trustee in bankruptcy declined to take, as she might lawfully do, and the property stood in the same relation to the incumbrances thereon as before the petition in bankruptcy had been filed. In other words, the rights of the mortgagor and mortgagees

were precisely the same as before, save that personal liability on the indebtedness might not be enforced in an action personally against the mortgagor as a debtor, owing to her discharge in bankruptcy. We have dealt with the remainder in this portion of the opinion on the theory that it was contingent, but without the design of so determining. Our conclusion is that, whether contingent or vested, the mortgages were rightly found enforcible against Mrs. Bisby's one-third interest in the real estate.

II. Another assignment is that the court erred in reforming the Hodson mortgage so as to cover all the property, whereas only a part of it was covered thereby. But marshaling the assets was prayed, and the 4. MARSHALING ASSETS AND SECURITIES : rule. court should have granted this relief by directing that all the realty covered by the four mortgages superior to that of Hodson be first sold and applied in the order of seniority in satisfaction of said mortgages, and that the realty covered by the Hodson mortgage be separately sold, and out of the proceeds thereof, any deficiency in the satisfaction of the other four mortgages be first paid, and whatever remained be applied in satisfaction of the Hodson mortgage. Instead of so directing, the decree of the court decreed that the five mortgages be paid, in the order of priority, from the proceeds derived from the sale of the entire property: that is, that whatever remained of the fund derived from the sale of plaintiff's one-third interest in the property be applied on the first four mortgages, and that whatever remained after satisfying the same be applied on the amount owing on the Hodson mortgage. The decree in this respect was erroneous.

III. Appellant assigned as error the holding of the court that two of the mortgages covered the rents and profits. The brief contains no propositions or authorities bearing on this point, and the argument merely repeats the

statement that the mortgages do not cover the same. Passing on the only point suggested, we have to say that the mortgages in terms include such rents and profits.

The point is made that the court erred in taxing attorney's fees on these mortgages. The decree does not authorize the taxation of attorney's fees, nor does any order appear of record, though an order by the court to so tax was held necessary in *Perry v. Kaspar,* 113 Iowa 268. In the absence of anything in the abstract indicating that attorney's fees were taxed or ordered taxed, we are unable to pass on the complaint interposed by appellant. If such fees were taxed, possibly the propriety thereof may be raised by a motion to retax costs; but as to this we express no opinion. The costs of appeal will be taxed to appellant, and the decree modified and affirmed, as above indicated.—*Modified and affirmed.*

PRESTON, C. J., EVANS and STEVENS, JJ., concur.