[Civ. No. 10942. Second Appellate District, Division Two.—May 19, 1936.]

CRULES R. CHEEK, as Trustee in Bankruptcy, etc., Respondent, v. THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES (a National Banking Association), Appellant.

Williamson, Ramsay & Hoge, Fulton Hoge and Alfred Connor Bowman for Appellant.

Paul W. Sampsell and Benno M. Brink for Respondent.

WOOD, J.—The defendant bank appeals from a judgment ordering it to deliver the assets of a revoked trust to plaintiff as trustee in bankruptcy of the estate of James W. Hellman, contending that it has a lien upon the assets created to secure loans made to Mr. Hellman.

James W. Hellman and Agnes K. Hellman, his wife, by instrument dated July 1, 1931, conveyed certain real and personal property to The Farmers and Merchants National Bank of Los Angeles and the bank thereupon executed a declaration of trust by which it was provided that payment of the entire net income thereof should be made to James W. Hellman during his life, and that thereafter a part of such income should be paid to Agnes K. Hellman during her life, the balance of the net income after the death of James W. Hellman being payable to the children of the trustors in equal shares. Among the provisions of the declaration of trust the following appears: "The Trustor, James W. Hellman, while he shall live, may, without the consent of the other Trustor, Agnes K. Hellman, by written instrument filed with the Trustee, and upon paying any sums due the Trustee and releasing it from and assuming all obligations affecting the Trustee to its satisfaction against any liabilities incurred by it in administering this trust, revoke it in whole or in part and/or may withdraw any or all of the trust estate, and the Trustee shall transfer and deliver the property affected thereby to said Trustor . . . "

Contemporaneously with the execution of the declaration of trust Mr. and Mrs. Hellman signed and delivered an instrument dated July 1, 1931, addressed to the bank, as follows: "For value received, we, jointly and severally, assign

to The Farmers and Merchants National Bank of Los Angeles, as collateral security to any and all loans which we may now owe or may hereafter secure from The Farmers and Merchants National Bank of Los Angeles, all of our right, title and interest in and to a certain Declaration of Trust dated July 1, 1931, wherein The Farmers and Merchants National Bank of Los Angeles is designated as Trustee, and the undersigned are designated as Trustor, and is identified as trust No. P–1067, together with the assets held thereunder, and we further direct and authorize the Farmers and Merchants National Bank of Los Angeles, in the event that it becomes necessary to do so, to sell any part of the trust assets for the purpose of paying said loans.''

Mr. and Mrs. Hellman were indebted to the bank at the time the above-mentioned instruments were executed. Thereafter further loans were made to them by the bank and they have been indebted to the bank at all times since July 1, 1931. James W. Hellman was adjudicated a bankrupt on August 1, 1932, and on September 30, 1932, the trustee in bankruptcy filed with the bank a written revocation of the trust and demand for the delivery of the assets thereof. On July 13, 1933, James W. Hellman, pursuant to an order by the referee in bankruptcy, executed a written revocation of the trust pursuant to the power of revocation therein reserved. No claim is made that either Mr. or Mrs. Hellman was insolvent at the time the property was conveyed to the bank to establish the trust.

By clear and unmistakable language Mr. Hellman was given the power to revoke the trust. The revocation made by the trustee in bankruptcy, reinforced by that of Mr. Hellman himself, unquestionably brought about the termination of the trust. It is clear that Mr. Hellman intended to and did assign to the bank as security for debts due the bank all his interest in the trust and in the assets thereof. Under the terms of the assignment the bank held the assets of the trust upon its revocation as security for the debts. Without foregoing the argument that the assignment might properly be construed as a *pro tanto* exercise of the power of revocation to the extent necessary to satisfy the indebtedness due the bank, defendant earnestly contends that the assignment created an equitable charge in its favor which ripened into a

direct lien upon the assets of the trust upon the exercise of the power of revocation. This contention must be sustained. Defendant cites with justified confidence the case of *Bridge* v. *Kedon*, 163 Cal. 493 [126 Pac. 149, 43 L. R. A. (N. S.) 404], in which the defendant Kedon had assigned to the plaintiff Bridge his expectant interest in the estate of his mother, who was then living, to secure the payment of certain sums loaned to Bridge. Prior to the death of his mother Kedon was adjudged a bankrupt and was discharged from all debts, including the loan from Bridge. Upon the death of his mother Kedon received a share of her estate and Bridge commenced action to enforce the assignment. The court ruled that "the discharge in bankruptcy did not divest Bridge of his then existing equitable right to Kedon's prospective inheritance". The court said: "The California cases . . . state the rule as a general one that equity will uphold assignments, not valid at law, of any future interest, as a rule applying alike to those which are vested, but relate to property to come into existence in the future, and those which rest only in possibility, provided they are fairly made and not against public policy. . . . We do not find in any of the decisions or in any of the authorities any difference between the rule as applied to the assignment of property not existing, but which will be the product or result of an existing contract or contractual relation, and assignments of a mere possibility, such as that of an heir in the estate of his living ancestor, at least so far as the right in either case to enforce such an assignment in equity is concerned." In *Pierce* v. *Robinson*, 13 Cal. 116, the court, referring to proceeds of future crops, said that equity will uphold assignments of things which have no present existence, but rest in possibility, and that "an agreement for such interests will take effect as such assignment when the subjects to which they refer have ceased to rest in possibility and have ripened into reality", if fairly made and not against the policy of the law. No contention is here made that the assignment to defendant bank was not fairly made or that it was against the policy of the law. As was held in *Bridge* v. *Kedon, supra*, from which quotation has just been made, the adjudication of Mr. Hellman as a bankrupt had no effect upon the bank's lien. The trustee received no greater rights in the premises than

those of Mr. Hellman. It follows that the bank has the right to insist on the enforcement of its lien.

The judgment is reversed.

Gould, J., *pro tem.*, and Crail, P. J., concurred.