[L. A. No. 6814.   In Bank.—August 20, 1923.]

## TITLE INSURANCE AND TRUST COMPANY (a Corporation), as Trustee, Respondent, v. MARTHA DUFFILL, Appellant.

[1] TRUSTS—TRUST AGREEMENT—SPECIFIC PERFORMANCE — EFFECT OF JUDGMENT — ESTOPPEL — CONSTRUCTION.—Where a trust agreement made by an expectant heir with his wife pending a divorce action provided that, upon his acquiring or receiving from his mother, by inheritance, any property whatsoever, or any interest therein, an undivided one-fourth of each and every parcel and interest was forthwith to become the property of the trustee therein named, said heir agreeing to convey and deliver to said trustee said undivided one-fourth as and when possessed of such property or interest, and that said trustee, during the natural life of the wife, was to pay over to her for her own use "all of the net income derived from the trust properties, but no part of the principal of said trust shall be expended or paid to" the wife, whether the effect of a judgment in an action by the wife, the trustee, and a minor son against said heir for specific performance of the trust agreement, declaring that the trustee was entitled to receive from said heir one-fourth of the property received and to be received by the heir from his mother, "all upon the trusts, and subject to the terms and conditions of the third subdivision of said" trust agreement, was to preclude the wife, in a subsequent action by the trustee to interpret the trust, from claiming that she is entitled to have all the cash and properties which had been delivered by the heir to the trustee paid to her as income arising from the trust and that all other income which might thereafter be received by said trustee from said heir's portion of the *corpus* of his mother's estate constitutes income distributable to her, cannot be determined from the judgment itself, but resort must be had to the trust agreement itself to understand what the effect of such judgment is and what is the situation of the parties under it.

[2] ID.—DECLARATION OF TRUST—CONSTRUCTION—INTENTION.—In seeking the true construction of a declaration of trust, the guiding principle must be the intention of the settlor—his intention as expressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test.

[3] ID.—CONSTRUCTION—INTENTION—HOW GATHERED.—In interpreting a declaration of trust, the only intention the court is authorized to declare is such as may be deduced from an interpretation of the instrument which was drawn and executed by the parties to

express their intention, which must be gathered from the general purpose and scope of the agreement.

[4] Id. — Uncertainty in Language — Favorable Construction to Beneficiary.—If· there be any doubt or uncertainty in the language of the trust it will be construed, if possible, in favor of the beneficiary and against the trustee.

[5] Id.—Trust Agreement Between Husband and Wife—Construction.—Where a trust agreement made by an expectant heir with his wife pending a divorce action provided that, upon his acquiring or receiving from his mother, by inheritance, any property whatsoever, or any interest therein, an undivided one-fourth of each and every parcel and interest was forthwith to become the property of the trustee therein named in trust, said heir agreeing to convey and deliver to said trustee said undivided one-fourth as and when possessed of such property or interest, and that said trustee, during the natural life of the wife, was to pay over to her for her own use "all of the net income derived from the trust properties, but no part of the principal of said trust shall be expended or paid" to the wife, a reasonable and just construction of said trust agreement is to hold that it was the manifest intention of the parties that just as soon as, and whenever, the husband should enter into the enjoyment of his mother's estate, the wife should, at the same time, and coincidentally with the husband's beneficial use, enter into as full and free enjoyment of her allotted portion of that same property as the husband of his remaining share.

[6] Id.—Income—Equitable Estate in Corpus of Testamentary Trust—Income to Wife Under Trust Agreement—Segregation of Trust Property.—Income received by the expectant heir under a testamentary trust created by the will of his mother, providing for the payment of income from the trust estate to him and giving him a part of the *corpus* of said trust estate, is not income received from his mother's estate, but is income from his own equitable or beneficial estate in the *corpus;* and the income received by the trustee under the trust agreement is income from said trustee's proportionate amount of such equitable estate in the *corpus* of the testamentary estate and is payable as such to the wife, said trustee also becoming at the same time that the heir became the owner of an equitable estate, the owner of its proportionate interest in said equitable estate; and the fact that the trustee under the trust agreement cannot obtain the physical segregation of the testamentary estate in the hands of the testamentary trustee does not affect the active operation of the trust created by the agreement.

[7] Id.—Testamentary Trust—Nature of Beneficiary's Interest—Equitable Estate.—The interest to which such expectant heir

succeeded under the testamentary trust created by the will of his mother was an equitable or beneficial estate in the *corpus* of the testamentary property.

[8] ID. — TITLE OF TRUSTEE — NATURE OF BENEFICIARY'S ESTATE IN TRUST PROPERTY.—While it is true that the legal title to all property constituting the *corpus* of the testamentary trust created by the will of the mother vested in the trustee therein named immediately upon her death, and that such title was declared and confirmed by the decree of distribution of her estate, it is equally beyond dispute that on her death there was also vested in the expectant heir an equitable estate or beneficial interest in her property independent of the legal estate which vested in the testamentary trustee.

[9] ID.—SECTION 863, CIVIL CODE—CONSTRUCTION.—The estate which a trustee takes by virtue of section 863 of the Civil Code, which provides that except as in the code provided, "every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust," is not necessarily a fee, but only such estate as is required for the execution of his trust. This rule that the trustee takes only such an estate in the trust property as is necessary to the discharge of his trust duties refers directly to the quantity of his estate in the property, as, for instance, an estate for years, an estate for life, or an estate in fee.

[10] ID.—ASSIGNABILITY OF EQUITABLE ESTATE.—The equitable estate and beneficial interest which vested in such expectant heir immediately upon his mother's death were assignable.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg, Alex W. Davis and James P. Sex for Appellant.

Hunsaker, Britt & Cosgrove for Respondent.

Geo. W. Dryer and Mulford & Dryer for Defendants Albert Duffill, a Minor, and Los Angeles Trust and Savings Bank, as General Guardian of the Estate of said Albert Duffill.

WASTE, J.—The plaintiff, as trustee under the terms of a written agreement, brought this action for the interpretation of the trust, and sought the direction of the court as to the proper application of certain funds in its possession. Judgment was entered in accord with its contentions, and Martha Duffill, one of the defendants, and a beneficiary under the terms of the trust, appealed. On rehearing, we are satisfied with and adopt the clear and comprehensive statement of the facts prepared by Honorable Charles A. Shurtleff, a former justice of this court, on the first submission of the case:

"This action was brought by plaintiff as trustee for a decree interpreting a trust created by a certain written contract dated August 26, 1914, in which it is named as trustee, the principal beneficiaries of which trust are the defendants Harry Duffill, Martha Duffill, his divorced wife, and Albert Duffill, a minor, and only child of Harry and Martha Duffill. The contract was entered into between the defendants Harry and Martha Duffill pending an action for divorce brought by Martha against Harry, and embodied the terms of an adjustment of their property rights. The contract was made in view of the fact that orders for alimony for Martha and maintenance for Albert, the minor child, might be made in said divorce action, and was entered into subject to the approval of the court, which approval was subsequently given in and by decrees entered in said action. At the date of this contract Eugenie A. Duffill, the mother of defendant Harry Duffill, was alive and possessed a large estate, and Harry Duffill was her sole heir at law. The contract indicates that at the time of its execution the parties thereto had contemplated, indeed acted upon the assumption, that at his mother's death Harry would come into a large part of her estate. The portions of the agreement material to this discussion are as follows: 'The first party (Harry Duffill) covenants that in the event he shall acquire or receive from Eugenie A. Duffill (his mother), by devise, bequest, inheritance, succession, or from any trust agreement wherein the first party is the beneficiary and his beneficial estate arises after the death of said Eugenie A. Duffill, any property whatsoever, whether real or personal, of any kind and wherever situated, or any interest therein, that forthwith upon acquiring or receiving each and every of said

properties or interests, an undivided one-fourth of each and every such parcel and interest shall become the property of the Title Insurance and Trust Company (plaintiff) as trustee, in trust nevertheless for the uses and purposes hereinafter set forth. So far as is legally possible first party does hereby grant, bargain, sell, convey, assign, transfer and set over unto said trustee, *an undivided one-fourth of each and every such property or interest.* First party covenants that when, if and as, he shall become possessed of each and every such property or interest, or obtain the right to possession of any of the same, that forthwith and without any demand being made upon him by second party (Martha Duffill) or the trustee, and at his own proper cost and expense, he will cause title to an undivided one-fourth of each and every said such property and interest to be given, granted, conveyed, assigned and delivered to said trustee and will do all those things necessary or proper to establish the title of said trustee thereto as fully and effectually as could be done were first party seized and possessed of the same at the date of this instrument. . . . All the property, real and personal, held by Title Insurance and Trust Company as trustee hereunder shall be held by it as trustee for the uses and purposes . . . namely, . . . from time to time to sell all or any part of said property on such terms and in such manner as it may see fit and from time to time to invest and reinvest the proceeds of any such sale or sales or any principal of the trust fund in such securities as are permitted for investment by savings banks under the laws of the state of California. . . . During the natural life of second party the trustee (at stated times) . . . shall pay over to second party (Martha Duffill) for her own use, *all of the net income derived from the trust properties, but no part of the principal of said trust shall be expended or paid to second party.'* The instrument further provides, that upon the death of Martha Duffill the assets of the trust remaining in the hands of the trustee shall become the property of Albert Duffill, the son, and in the event his death shall have occurred prior to the death of Martha Duffill then such assets shall, upon her death, become the property of the lawful issue *per stirpes et non per capita* of Albert, living at *his* death, 'and in default of such issue the party of the first part shall have an estate in remainder in said

assets, dependent upon the life estate in said assets herein and hereby created, for and during the natural life of the party of the second part.' It was further agreed that the trust 'shall wholly cease and determine upon the death of second party.'

"Eugenie A. Duffill died January 7, 1916, some sixteen months subsequent to the execution of the agreement of August 26, 1914, leaving a will, which will was admitted to probate by an order of the Superior Court of the State of California in and for the County of Los Angeles, and a decree of distribution was made therein on July 17, 1918, an appeal was taken from this decree to this court (*Estate of Duffill*, 180 Cal. 748 [183 Pac. 337]), which resulted in an affirmance, and the same becoming final in August, 1919. The questions adjudicated and settled in that appeal are of no special moment here, and our reference to the same is for the purpose of showing the finality of such decree of distribution. Under the terms of this decree, property real and personal of large value was distributed to the Los Angeles Trust and Savings Bank, the trustee named in the will, upon the following trusts: to take, hold and have possession of the same 'with full power to sell, lease, improve or exchange, invest, or reinvest any or all of said property, . . . to invest, and reinvest and keep invested, said property . . .' and 'shall pay to said Albert Duffill, out of the income derived from the principal of the trust estate, the sum of three thousand dollars ($3,000) per year, at such times and in such amounts as said trustee shall deem expedient, . . . the sum of four thousand dollars ($4,000) to Harry Duffill' (under like conditions), each of said payments to continue 'until said Albert Duffill shall reach the age of twenty-one years, or in the event of the death of said Albert Duffill, until the date when said Albert Duffill would have attained the age of twenty-one years had he lived.' ' . . . that one-half of the balance of the income from the principal of said trust estate, after paying the aforesaid (the sums payable to Harry and Albert) and the necessary expense of administration of the estate, shall be accumulated during the minority of Albert Duffill by said trustee, for his use and benefit, . . . and . . . the other one-half of the income from the principal of said trust estate shall be paid to Harry Duffill from time to time . . . after deducting the aforesaid annuities (those specified in

the decree) and the necessary expense of administration of the said estate. . . . When said Albert Duffill shall attain the age of twenty-one years, in case said Harry Duffill shall then be living, the trustee shall segregate the *corpus* of said trust fund (excluding the accumulations for the benefit of Albert) into two equal parts, and shall transfer and convey one of said parts to the said Harry Duffill.' The decree proceeds to provide that in the event of the death of the said Harry Duffill prior to the distribution to him of said part, the trustee shall distribute all of said trust fund to said Albert Duffill upon terms and conditions not material to this inquiry, and that upon the death of Albert while there remains 'undistributed' to him any portion of the trust estate, the trustee shall transfer, convey and distribute such portion as follows: 'to Martha Duffill one-fourth of the entire trust estate then in the hands of the said trustee, including any accumulated income; and the remaining three-fourths of the said trust estate' to Harry Duffill, such distribution to said Harry Duffill to be made at the same time that the said Albert Duffill would have attained the age of twenty-one years.

"The decree of distribution further orders that 'in the event of the death of both Harry Duffill and Albert Duffill while any portion of the trust estate remains in the hands of the said trustee and undistributed, then upon the death of the last survivor of them said trustee shall thereupon distribute said entire trust fund so undistributed . . . as follows: To Martha Duffill one-fourth of the said estate,' and the remaining three-fourths to certain designated persons whose names need not be stated.

"The will of Eugenie A. Duffill also directed the Los Angeles Trust and Savings Bank as trustee to accumulate the surplus income from the trust property until Albert attained or would have attained majority if he lived, and at said time, to pay to Harry Duffill one-half of such accumulated income, and to transfer to him one-half of the *corpus* of the trust estate. This provision for the accumulation of this one-half of the surplus income was declared to be invalid, not being for the benefit of a minor, and for that reason one-half of such accumulated income was distributed directly to Harry Duffill (*Estate of Duffill, supra*). Pending the administration, which was prolonged by litigation,

the income accumulated in a considerable amount. Subsequent to the decree of distribution becoming final the plaintiff in an action brought against Harry Duffill for that purpose, obtained a decree directing specific performance of that portion of the contract of August 26, 1914, whereby he (Harry) obligated himself to transfer to plaintiff as trustee portions of any interests he might acquire from his mother's estate. In obedience to this decree Harry Duffill, at the time the instant suit was commenced, had paid or transferred, or caused to be paid or transferred to the plaintiff as trustee under the contract of August 26, 1914 (and wherever herein we refer to plaintiff as trustee it has reference to trustee under said last-mentioned contract) cash and properties in lieu of cash amounting to $12,229.44, which payment represented the proportionate amount of Harry Duffill's yearly annuity of $4,000 and one-half of said accrued income which was, as already stated, paid directly to Harry. At the same time, and upon the same date, there was also delivered to plaintiff, as such trustee, 150 shares of the common stock of the Grasselli Chemical Company, valued in said decree of distribution at $190 per share, making a total delivery of $40,729.44.''

Martha Duffill claimed that under the provisions and trusts established by the agreement of August 26, 1914, she was entitled to have all of the cash and properties which had been delivered by Harry Duffill to plaintiff as trustee paid to her as income arising from the trust established by the contract, and that any and all other income which might thereafter be paid to plaintiff under the terms of the contract, or the decree of specific performance, and shall accrue from Harry Duffill's portion of the *corpus* of the estate of Eugenie A. Duffill, also constitutes income in the hands of plaintiff, distributable to her when and as the same is received by it. The plaintiff as trustee, being in doubt as to her interpretation of the trust agreement, brought this action. The trial court sets out in its findings, *in haec verba,* the contract of August 26, 1914, and so much of the decree of distribution in the matter of the estate of Eugenie A. Duffill as is germane to this controversy. It also ''found,'' in what amounts to a misplaced conclusion of law, ''that under the terms and provisions of the contract of August 26, 1914, all sums of money, and all other property which

has been, or shall hereafter be, received by plaintiff out of and from defendant Harry Duffill's share and interest in either the income or the principal of the estate of Eugenie A. Duffill, deceased, or of the trust created in and by the decree of distribution in the matter of said estate, constitutes principal or *corpus* in the hands of plaintiff, as trustee, under said contract of August 26, 1914, and not income; and defendant Martha Duffill is only entitled, under said contract, to receive from plaintiff the net income derived by plaintiff as trustee under said contract from the property and moneys so received and so to be received by it, and from the investment thereof, and that no part of any money or other property, which has been so received by it, shall be expended or paid to said Martha Duffill.'' The conclusions of law conformed to this view, and judgment was entered accordingly. From this judgment the defendant Martha Duffill appeals.

[1] Appellant is confronted at the outset on this appeal with the contention of the respondents that she is estopped by the judgment, in the action in specific performance referred to, from asserting the claims she brings to this court in the present action. She asserts that this question was not raised nor argued in the lower court, and is for the first time advanced here. Even though that be so, we feel inclined to consider briefly the situation in which the parties were left by the decree in specific performance, for the respondents have placed much reliance upon the point, and we do not agree with them in their contention. From the judgment-roll introduced by appellant, we learn that the action referred to was brought by the plaintiff here, as trustee, Albert Duffill, the minor, by his guardian *ad litem,* and Martha Duffill, as plaintiffs, against Harry Duffill and the Los Angeles Trust and Savings Bank, as executor of the estate of, and trustee under the will of, Eugenie A. Duffill, deceased. The complaint sets out in full the agreement of August 26, 1914, and the decree of distribution in the estate of Eugenie A. Duffill, also the various steps in the administration of the mother's estate, substantially as narrated in our statement of facts, and the incurring by Harry Duffill of certain fees and costs in connection with securing his share of the estate under the testamentary trust. It is then alleged that a demand was made on Harry to assign,

transfer, set over and convey to the Title Insurance and Trust Company, as trustee under the terms of the contract of August 26, 1914, one-fourth of the annuity and all sums already received by him, and to be received, from the estate of Eugenie A. Duffill, which he refused to do, although "the Title Insurance and Trust Company is entitled to receive under such contract of August 26, 1914, each and all of said properties." The prayer is for a determination of what, if any, fees and costs may be deducted by Harry from the one-quarter interests, under the terms of the August contract, and for a declaration of what interests and properties were properly transferable to the Title Insurance and Trust Company under that agreement, and that the Los Angeles Trust and Savings Bank distribute the same direct to, and that Harry execute proper deeds and transfers conveying and transferring to, the Title Insurance and Trust Company, as trustee, such interests and properties "to be conveyed or transferred under the terms of said agreement of August 26, 1914." Harry Duffill, in answer to the complaint, asserted that the plaintiffs, by reason of alleged opposition to distribution of the estate of Eugenie A. Duffill, had forfeited all right to, and were barred from, participating in, or having delivered to the Title Insurance and Trust Company any of the property ordered distributed in that estate, but that notwithstanding such alleged fact he was willing and ready to execute an instrument in writing transferring to the Title Insurance and Trust Company one-fourth of all property distributed to him or which he might receive, subject only to his right to reduce that portion to a one-fifth interest to offset reasonable costs and attorney's fees incurred by him in relation to the testamentary trust. The other defendants disclaimed any interest in the controversy other than the duty to pay over or distribute all money or properties to the persons entitled thereto. The court adjudicated the matter of the costs and attorney's fees expended by Harry Duffill. It found and decreed that the plaintiffs in the action were entitled to have the agreement of August 26, 1914, between Harry Duffill and Martha Duffill specifically enforced "upon the conditions and as hereinafter expressed." It directed the proper transfers and conveyances to be made, and decreed that the Title Insurance and Trust Company, as trustee, "under and pursuant to the

terms of the agreement of August 26, 1914,'' between Harry
Duffill and Martha Duffill, was entitled to receive from
Harry Duffill one-fourth of such interests as he had or could
acquire from the estate of Eugenie A. Duffill, after reduc-
ing to a one-fifth interest a certain portion of the estate to
cover a *pro rata* amount of costs and attorney's fees in-
curred in conducting the controversy involving the distribu-
tion of the mother's estate, ''all upon the trusts, and subject
to the terms and conditions of the third subdivision of said
agreement of August 26, 1914.'' The decree directed the
execution and delivery of the proper conveyances and trans-
fers to be made to make the judgment of the court effective.
Nowhere in the findings, conclusions of law, or in the decree,
did the court place, or attempt to place, any construction
or interpretation upon the agreement of August 26, 1914.
It contented itself with reading into its judgment the ''terms
and conditions of the third subdivision of said agreement.''
It is therefore necessary to resort to the agreement to under-
stand what the effect of the judgment in specific performance
is, and what is the situation of the parties under it. The
issue in the case in which it was rendered was whether or
not the plaintiff in the action, the plaintiff here, as trustee,
was entitled to receive from Harry Duffill a certain pro-
portion of all he received from his mother's estate. The
controversy here is as to what constitutes principal or *corpus*
of that portion of the estate in trust, once it is lodged in
plaintiff's hands. That issue was, so far as the record
discloses, never submitted to the court in the other action.
When, therefore, respondents say that it was adjudged by
the decree in specific performance that precisely the same
property which the appellant here claims to be hers abso-
lutely is property from which, in the hands of, and subject
to the management of, the plaintiff, as trustee, she is en-
titled to the income only, resort must be had to the con-
tract of August 26, 1914, to determine if that be so. It
results that whether or not appellant is estopped from as-
serting the claims she now brings to this court depends
upon an interpretation of the agreement between herself
and Harry Duffill.

While the ultimate question to be considered is, What
constitutes the *corpus* or principal of the trust estate created
by the August agreement entered into by Harry and Mar-

tha? the solution of that problem can only be accomplished by determining the nature of the property, or interest in property, which Harry took at his mother's death under the testamentary trust created by her will. In opposition to the theory which was accepted by the trial court, appellant contends the one-half of the income paid and being paid to Harry from the estate of Eugenie A. Duffill, deceased, constitutes income to Harry upon an equitable interest owned by him in his mother's estate, and that inasmuch as it is income to Harry it is income to plaintiff and appellant, and forms no part of the *corpus* of the trust provided by the contract of August 26, 1914. In the abstract her argument is that Harry Duffill, immediately upon the death of his mother, acquired and became the owner of an equitable estate in the property devised by Eugenie A. Duffill to the Los Angeles Trust and Savings Bank, and has received, and will continue to receive, income therefrom by virtue of his equitable ownership of that interest; that at the same time and by reason of the contract of August 26, 1914, a like equitable estate as to one-fourth of such property and interest vested in plaintiff; that immediately upon Harry acquiring and becoming the owner of his equitable interest, he held whatever portion he was obliged to transfer to the Title Insurance and Trust Company under his contract in trust for the plaintiff as trustee; that in equity the plaintiff immediately became the owner of such proportionate amount of Harry's equitable estate, which, although the legal title is still in the Los Angeles Trust and Savings Bank, constitutes the *corpus* of the trust estate created by the agreement between Harry and Martha; that, as a result, any income accruing upon such proportionate interest constitutes income upon an equitable interest or estate held by plaintiff as trustee in just the same manner that the residue of the income constitutes income upon Harry's equitable interest in the mother's estate; that plaintiff has received, and is receiving, one-fourth of this income in exactly the same capacity as that in which Harry receives the remaining portion. More concretely stated, appellant's contention is that plaintiff, Title Insurance and Trust Company, has stepped into Harry's shoes as to this one-fourth proportionate interest, and consequently as the money paid would in fact constitute income on an equitable estate if paid to

Harry direct, it must constitute income on an equitable estate as paid to plaintiff, and should be paid directly to Martha. In answer to this contention, respondents, other than plaintiff, take the position that the right or interest of Harry Duffill in his mother's estate is only a right to receive something by transfer or conveyance from the trustee. Eugenie A. Duffill, they argue, did not choose to be her own conveyancer, but vested title in her trustee, Los Angeles Trust and Savings Bank, it in turn to pass the title by conveyance and transfer to whoever ultimately becomes entitled to it. The only present right or interest to which Harry Duffill is entitled, under their contention, is the right to enforce the trust with respect to the payment of his annuity, and one-half of the net income after all the annuities and the expenses of administration are paid. "While he has a present vested right to receive a share of the income of that [testamentary] trust estate," they say, "and so to enforce that trust, he has no present right in or to any property, or the possession thereof, until there is income which Los Angeles Trust and Savings Bank, as trustee under the will of his mother, is required to pay over to him. When that state of facts comes into existence, and not until then, the right under the contract of August, 1914, arises in the (plaintiff) Title Insurance and Trust Company. And when it does arise," is the point of their contention, "the fruit of that right is principal of the trust in the hands of that company, as trustee" under the plain terms of the contract, and plaintiff may thereupon pay over to Martha, for her own use, all of the net income derived from such trust property in its hands, but no part of the principal of the trust may be expended or paid to her.

What acceptance of one or the other of these two different contentions concerning the trust created by the August agreement means to appellant is at once apparent. If her theory be the right one, and "what is income to Harry is income to Martha," she is entitled to immediate payment by the Title Insurance and Trust Company as trustee of all that it has thus far received, or will receive, from Harry pending the termination of the testamentary trust created by his mother's will; for, until that time, he will receive nothing but income from that source. If,

on the other hand, as contended by respondents, what is income to Harry from the testamentary estate becomes principal or *corpus* of the trust in the hands of plaintiff under the agreement, appellant is only entitled to receive whatever earnings plaintiff is in turn able to produce from the moiety of Harry's income turned over to it. Appellant here attacks what she terms "the inequity and iniquity" of the contention of the respondents. She assumes that in the administration of the contract trust plaintiff may realize six per cent. "Supposing a case," she says, "where Eugenie A. Duffill had disposed of her property to a trustee in trust to pay the income thereof to Harry Duffill for the period of his lifetime. If we would apply the contentions of Harry Duffill to such a case, his wife, by virtue of his settlement agreement by which he intended to have paid her one-fourth of his income which he should receive, would receive only six per cent on one-fourth of" that amount.

[2] In seeking the true construction of a declaration of trust, the guiding principle must be the intention of the settlor—his intention as expressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test. (*Chater* v. *Carter*, 238 U. S. 572, 584 [59 L. Ed. 1462, 35 Sup. Ct. Rep. 859, see, also, Rose's U. S. Notes].) [3] The only intention this court is authorized to declare is such as may be deduced from an *interpretation* of the instrument which was drawn and executed by the parties to express their intention (*Welton* v. *Palmer*, 39 Cal. 456, 458), which must be gathered from the general purpose and scope of the agreement. (*Colton* v. *Colton*, 127 U. S. 300, 311 [32 L. Ed. 138, 8 Sup. Ct. Rep. 1164, see, also, Rose's U. S. Notes].) [4] If there be any doubt or uncertainty in the language of the trust it will be construed, if possible, in favor of the beneficiary and against the trustee. (*Sprague* v. *Edwards*, 48 Cal. 239, 247; *Ringrose* v. *Gleadall*, 17 Cal. App. 664, 667 [121 Pac. 407].) The underlying reasons which led to the execution of the agreement of August 26, 1914, and the situation of the parties to it at that time, are clearly set forth by the parties themselves in the preamble to that instrument:

"That whereas, the first party [Harry] and second party [Martha] are at the date hereof, husband and wife, and

Albert Duffill is the only child born of their marriage and
Eugenie A. Duffill is the mother of the first party; and

"Whereas, an action is now pending in the Superior
Court of the State of California, in and for the County
of Los Angeles, wherein second party is plaintiff and first
party is defendant, being case No. B–1182, wherein the
plaintiff prays, among other matters, for a decree that the
bonds of matrimony between first party and second party
be dissolved; and

"Whereas, there are involved in said action questions
as to the respective property rights of said parties and
issues of fact as to property which may be the basis of
making and enforcing of orders for alimony and mainte-
nance of second party and Albert Duffill; and

"Whereas, the parties hereto are desirous of making a
settlement and agreement regarding all of the property
rights and interests belonging to them and a division of said
properties so that in the event an interlocutory decree of
divorce shall be rendered in said action, that the property
rights of the parties hereto may be settled and determined
by said court in accordance with the intent of the parties
as herein expressed; and

"Whereas, this agreement is made subject to the ap-
proval of said court and subject to the rendering of said
decree for the sole reason that in the event that the parties
hereto are to remain husband and wife some other and
different division of their respective property rights would
be proper and advisable for both of them;

"Now, therefore, the first party does hereby covenant and
agree with second party as follows."

Then follow covenants and stipulations, from which it
appears that Harry had deeded to Martha an undivided
one-half interest in "all the real and personal property
described in or referred to in" a separate declaration of
trust with which we are not now concerned, and otherwise
carried that agreement into execution. These clauses, desig-
nated "First" and "Second," we may assume dispose of
the rights and interests of the parties in whatever property
they then possessed; but Harry's mother was possessed of
much property, and it was only reasonable to suppose that
he would come into a share of her estate upon her death.
The "third" provision of the agreement relates directly to

that subject. By its terms Harry covenanted with appellant that an undivided one-fourth of each and every parcel and interest of or in any property he should acquire or receive from his mother by devise, bequest, inheritance, succession, or from any trust agreement wherein he was the beneficiary and his beneficial estate arose after his mother's death, should *forthwith*, upon his acquiring or receiving the same, become the property of this plaintiff, as trustee, for the uses and purposes set forth in the agreement. The vocabulary of legal phraseology is well-nigh exhausted in the stipulations of the contract in an apparent endeavor to make it plain that so far as is legally possible Harry did, by the agreement itself, vest plaintiff with an undivided one-fourth ''of each and every such property and interest,'' and would ''if and as'' he should ''become possessed of . . . or obtain the right to possession of any of the same,'' do all things necessary or proper to establish the title of the plaintiff as trustee as fully and effectually as could be done if he were seised and possessed of the property or interest at the date of the instrument.

It seems improbable that the parties to such an agreement would enter into an arrangement, so far as their own acts and interests were to be governed, that would permit a situation to arise which might almost effectually defeat the scope and purpose of their contract. If a rationally fitting and proper interpretation of an instrument of this character will prevent that result, such exposition should be accepted. The instrument here calls for an exact division between Harry Duffill and his wife of whatever property Harry should acquire or receive from his mother's estate, on the basis of three-fourths to Harry and one-fourth to Martha's use. What each is to receive, and, we think, when each is to receive it, are stated in plain terms. [5] A most reasonable and just construction of the agreement between Harry Duffill and his wife is to hold that it was their manifest intention, which they have clearly expressed in the contract, that just as soon as, and whenever, Harry should enter into the enjoyment of any part or portion of whatever property he should acquire or receive from his mother's estate, Martha Duffill should, at the same time, and coincidentally with Harry's beneficial use, enter into as full and free enjoyment of her allotted portion of that

same property as Harry of his remaining share. The injustice of any other conclusion has already been indicated by the appellant in the apt illustration cited by her. It was certainly not the intention of the parties that Harry might enjoy to the fullest extent, other than actual possession, his share of his mother's estate, and that his wife, who was expected to share to the limited extent, should be cut off with a mere pittance as compared with what it was evidently intended she should have. It must not be forgotten that Harry did not vest plaintiff, for Martha's use and benefit, with one-quarter of any "income" he might thereafter receive from a share of his mother's estate held in trust, but with an undivided one-quarter of each and every parcel of "any property whatsoever, whether real or personal, of any kind and wherever situated, or any interest therein," which should *forthwith "become the property of the Title Insurance and Trust Company* as trustee" for the purposes of the trust. [6] If Harry has acquired any interest or estate in the property held in the testamentary trust, and has entered into its enjoyment, it must follow that plaintiff, for Martha's use, must share in such use and enjoyment to the extent guaranteed by the August agreement. This we take to mean that if Harry has now an interest in the *corpus* of the testamentary trust, a proportionate right and interest in the same *corpus* has vested in plaintiff. We find no reason for delaying the active operation of the trust for appellant under the August agreement in so far as is possible from the mere fact that plaintiff cannot now obtain the physical segregation of the trust properties in the hands of the Los Angeles Trust and Savings Bank. It is to all intents and purposes actually in receipt of the income on the share of the *corpus* of the testamentary trust with which it was vested on Harry's equitable succession to his entire interest. This income is not received by plaintiff from the mother's estate. It is income from property received by Harry from his mother's estate, the portion of which, under the terms of the August agreement, at once passed to plaintiff. In other words, the income receipts to plaintiff are not directly from the mother's estate, but are receipts from the income of its equitable property interest in a portion of the *corpus* of the testamentary estate. There is no more justification for

holding that these receipts are *corpus* merely because they are in the hands of plaintiff as a trustee than there would be in saying they constituted *corpus* if the time of possible physical segregation of the trust properties had not been postponed by reason of the testamentary trust, and distribution of the mother's estate had been made. Under those circumstances, one-quarter of Harry's share of the property received (not the income it might produce) would have constituted the *corpus* of the trust in plaintiff for Martha's use, and she would have been entitled to have paid to her all the net income derived therefrom through plaintiff's administration of the fund. The interposition of the trust for Martha does not act to change the nature of the income. Our former opinion erroneously seemed to imply that it did. We see no reason for making a distinction between income accruing from Harry's property, received through his beneficial interest in the mother's estate, and paid to plaintiff, and income that might accrue to that same property if actually possessed and administered by the plaintiff. We deemed it unnecessary on the former hearing to determine whether or not Harry took an equitable estate in the *corpus* of the trust created by his mother's will, taking the position that if he did, such equitable interest with the income thereon is an interest in property arising out of the mother's estate, and, under the August agreement, part of the *corpus* of the trust provided for by that instrument. [7] We are now convinced that he took such an equitable or beneficial estate and, as we have attempted to show, that any income received by him is not in any sense an interest, estate, or property acquired from his mother's estate, but interest derived from his own equitable estate in the property of the testamentary trust. This we think to be the proper theory on which to decide the controversy.

The theory that Harry Duffill received at his mother's death a beneficial interest in the property belonging to her, and that his subsequent receipts, therefore, are not directly from her, but are receipts from the income of his property, finds support in what we believe to be the status of the equitable interest and estate of a *cestui que trust* in property in this state. It is worthy of note that in the distribution of the mother's estate in this very matter Harry Duf-

fill's equitable estate was recognized beyond the provisions
of his mother's will. Mrs. Duffill intended that he should
receive one-half of the income from the trust created by
her, but upon the void condition that it should be accumu-
lated during Albert's minority. As was pointed out by
this court, it was undoubtedly the intention of the testatrix
that the income should be retained and go with the *corpus,*
to be held by the testamentary trustee and administered
as principal, but this intention was frustrated by her un-
lawful wish for accumulation of that portion of the fund,
and it was properly decreed that Harry should enter upon
its immediate use and enjoyment. (*Estate of Duffill,* 180
Cal. 748, 761 [183 Pac. 337].) **[8]** While it is beyond
dispute that by the terms of the will of Eugenie A. Duffill
the legal title to all property constituting the *corpus* of the
testamentary trust created by her vested in the Los Angeles
Trust and Savings Bank, as trustee, immediately upon her
death, and that such title was declared and confirmed by
the decree of distribution of her estate (*Western Pac.
R. R. Co.* v. *Godfrey,* 166 Cal. 346, 349 [Ann. Cas. 1915B,
825, 136 Pac. 284]), it is equally beyond dispute that on
her death there was also vested in Harry Duffill an equi-
table estate or beneficial interest in her property independent
of the legal estate which vested in the testamentary trustee.
In England, devises of trust, under this doctrine of an
equitable interest, are distinct substantive devises, standing
on their own basis, independent of the legal estate which
is "nothing but the shadow which always follows the trust
*res* in the eye of a court of equity." (*Attorney-General*
v. *Downing,* Wilm. 1 (Eng.) 22 [97 Eng. Reprint, 1].)
In a still earlier English case (*Burgess* v. *Wheate,* 1 Eden,
177), Lord Keeper Henly (page 251) said that the trust
should be considered in equity as the "real estate" and
the "trustee should take no beneficial interest that the
*cestui que trust* can enjoy." In the same case, Lord Mans-
field said (pages 217, 226) : "Now trusts are considered
. . . as the real ownership of the land . . . the same as the
land and trustee . . . is in no event to take a benefit."
The generally accepted rule in this country also is that
"under the system now prevailing the *cestui que trust* is
regarded as the real owner of the property, the trustee being
merely the depositary of the legal title. His is not a prop-

erty right, but a legal duty founded upon a personal confidence; his estate is not that which can be enjoyed, but a power that can be exercised.'' (39 Cyc. 203.) Such estates ''are in equity what legal estates are in law; the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow always following the equitable estate, which is the substance, except where there is a purchaser for value and without notice who has acquired the legal estate.'' (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 147; Underhill on Trusts and Trustees, 4th ed., p. 6, art. II.)

[9] Respondents, it will be remembered, contend that Harry Duffill took no estate or interest in his mother's property, but only the right to enforce the performance of the trust. Such contention is largely based on section 863 of the Civil Code, which provides that except as in the code provided ''every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust.'' Aside from the fact that but little of the property held under the testamentary trust is *real* property rendering the code section of but little moment in this discussion, the construction placed upon its provisions by respondents does not follow. The section was adopted as part of the Civil Code in 1872. It has been construed by this court many times, and the conclusion has been firmly established that ''the estate which a trustee takes by virtue of section 863 is not necessarily a fee, but only such estate as is required for the execution of his trust.'' (*Keating* v. *Smith,* 154 Cal. 186, 192 [97 Pac. 300]; *Morffew* v. *San Francisco etc. R. R. Co.,* 107 Cal. 587, 595 [40 Pac. 810].) This rule that the trustee takes only such an estate in the trust property as is necessary to the discharge of his trust duties refers directly to the quantity of his estate in the property, as, for instance, an estate for years, an estate for life, or an estate in fee. (*Estate of Pichoir,* 139 Cal. 682, 688 [73 Pac. 606].) In *Gray* v. *Union Trust Co.,* 171 Cal. 637, 640 [154 Pac. 306, 308], a substantive ''equitable estate'' was recognized to exist in one who had a ''usufructuary interest in the whole estate during her life,'' notwithstanding there was ''conveyed to

the trustee the whole legal title, since so much [was] plainly necessary for the purposes of the trust (Civ. Code, sec. 863)," which general purposes were to give the trustor the beneficial use of the property during her life, and upon her death to see that the property went to her nominees under her will. (See, also, *Estate of Aldersley*, 174 Cal. 366, 371 [163 Pac. 206]; *Weston* v. *Weston*, 125 Mass. 268; *Crooke* v. *County of Kings*, 97 N. Y. 421, 446; *Patton* v. *Ludington*, 103 Wis. 629, 644 [74 Am. St. Rep. 910, 79 N. W. 1073]; *Williams* v. *Williams*, 135 Wis. 60 [115 N. W. 342]; *Estate of Fair*, 132 Cal. 523, 550, 571 [84 Am. St. Rep. 70, 64 Pac. 1000].)

It were useless, we feel, to carry this discussion to greater length, or to discuss other phases of the matter and probable lines of solution of the problem here presented. Harry Duffill was vested with an equitable estate and beneficial interest in his mother's property immediately upon her death, with only such legal title lodged in the Los Angeles Trust and Savings Bank as is required for the execution of the testamentary trust. **[10]** That this interest was assignable is beyond controversy. (5 C. J., p. 854; 3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1271. See, also, *Bridge* v. *Kedon*, 163 Cal. 493, 500 [43 L. R. A. (N. S.) 404, 126 Pac. 149].) Whatever may be the duration or quantity of the equitable estate vested in Harry, whether for years or for life, or in mere expectancy, he has received, and is receiving, income thereon. What condition will prevail when the testamentary trust is terminated by lapse of time or death does not now concern us. The accrued and accruing income received by Harry, including the portion paid to plaintiff, is income from Harry's own equitable interest, and is not an interest in property arising out of the mother's estate. It is therefore "income to Martha," and should not be administered as *corpus* of the trust under the August agreement, but should be accounted for and paid direct to appellant as income.

As the relation of plaintiff to appellant in the matter of the disposition of whatever it has already received from Harry, and will continue to receive until the testamentary trust is dissolved, depends solely upon the interpretation of the agreement of August 26, 1914, there can be no occasion for another trial of the issues presented by this appeal.

The judgment is reversed and the cause remanded to the lower court, with instructions to enter judgment in accord with this opinion. When so entered, the judgment will stand affirmed.

Myers, J., Richards, J., *pro tem.*, Wilbur, C. J., Lennon, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.