198 Cal.App.2d 503 (1961)
Estate of JENNIE W. JOHNSON, Deceased. WELLS FARGO BANK AMERICAN TRUST COMPANY, as Trustee, etc., et al., Objectors and Appellants,
v.
DEPARTMENT OF MENTAL HYGIENE OF THE STATE OF CALIFORNIA, Claimant and Respondent.
Civ. No. 19894. 
California Court of Appeals. First Dist., Div. One. 
Dec. 27, 1961.
 Raymond H. Levy for Objectors and Appellants.
 Stanley Mosk, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Claimant and Respondent.
 BRAY, P. J.
 The First Church of Christ, Scientist, in Boston, Massachusetts, beneficiary under the will of Jennie W. Johnson, deceased, and Wells Fargo Bank American Trust Company, trustee of the estate of said deceased, separately appeal from "Order Approving Report of Referee and Instructing Trustee," ordering payment to respondent Department of Mental Hygiene of the State of California of certain sums for the care of Molly Watkins, a beneficiary of said trust.
 Question Presented.
 Is the interest of a beneficiary in a discretionary trust created for her care by a relative who would not be liable for the beneficiary's care under section 6650, Welfare and Institutions Code, such that said trust is liable for the beneficiary's support in a state mental hospital?
 Record.
 Molly Watkins is the sister of Jennie W. Johnson, deceased, who died August 20, 1958. Since 1933 Molly has been a patient at Stockton State Hospital. In January, 1946, Jennie *505 advised the medical superintendent of the hospital, "I feel that I can afford to pay $10.00 per month for the care of my sister ..." An account was established by a document entitled "Account Adjustment and Rate Proposal" for $10 per month commencing February 1, 1946.
 On July 31, 1952, she wrote the Department of Mental Hygiene, "I have been providing the sum of Ten ($10.00) per month for my sister's care, but at this time I want to do the best I can, so I am making the sum ... [of $25] for this coming months care (Aug/52) and will continue to send this sum as long as it is possible for me to do so. In any event, I will do all I can as long as I can. I provide her clothes and visit her as often as it is possible for me to do so." August 19, 1952, the director acknowledged to Mrs. Johnson the receipt of this letter. On October 29, 1952, the Director of Mental Hygiene sent Jennie a mimeographed form letter stating, "You will remember, of course, our letter advising you of your responsibility for payment of charges for care and medical treatment of ... [Molly] as provided for in Sections 6650 and 6651 of the Welfare and Institutions Code." The letter then stated that a charge of $25 per month effective August 1, 1952, had been established. A statement covering accrued charges was enclosed.
 Apparently Jennie paid $25 per month for Molly's care and also provided her clothing, from 1952 until her death.
 For the period from August 20, 1958, through December 31, 1959, the department demanded $2,815.35 of appellant trustee, based upon a charge for Molly's care of $156 per month; and for the year 1960 the department demanded monthly payments of $183. The trustee refused to pay these amounts and petitioned the probate court for instructions. The court ordered the trustee to make these payments.
 Liability of Trust Estate and Beneficiary's Interest Therein.
 Jennie's will is dated May 28, 1956, approximately four years after the last-mentioned exchange of letters. The will, except for certain specific bequests, devised all of the testatrix' property to the above mentioned trustee "in trust nevertheless for the following uses and purposes: The trustee shall pay from income, and if necessary from principal, such amounts as in its sole discretion it may deem necessary for the support and benefit of my sister Molly Watkins, an inmate of the State Hospital at Stockton. In determining the *506 amounts to be paid, the Trustee shall take into consideration the fact that my payments during my lifetime have been in the neighborhood of Twenty-five Dollars ($25) a month together with clothing. Any income not used for the purposes of said support shall be accumulated and added to principal. Upon her death the Trustee shall pay from the principal of the trust fund such amounts as may be necessary to effect the burial of my sister in Fresno in my father's cemetery plot held in the name of W. W. Watkins, and to pay any necessary funeral expenses. The entire principal remaining of said trust estate, together with any accrued or undisbursed income, shall vest in and go to First Church of Christ Scientist, Boston, Massachusetts."
 The decree of distribution in Jennie's estate distributed to the trustee under the trust declared in the will $13,812.62. The decree expressly stated the trustee's duties concerning Molly as follows: "Provided that the trustee shall pay from income, and if necessary from principal such amounts as in its sole discretion it may deem necessary for the support and benefit of said sister Molly Watkins, an inmate of the State Hospital at Stockton. In determining the amounts to be paid, the Trustee shall take into consideration the fact that payments during the lifetime of deceased have been in the neighborhood of Twenty-five Dollars ($25) a month together with clothing. Any income not used for the purposes of said support shall be accumulated and added to principal." Then follows a provision for Molly's funeral and burial in case of death. Then, "The entire principal remaining of said trust estate, together with any accrued or undisbursed income, shall vest in and go to the First Church of Christ Scientist, Boston, Massachusetts."
 Section 6650 of the Welfare and Institutions Code provides liability for certain relatives of a person confined in a state mental hospital for the care and treatment of such person. It is conceded that a sister is not one of those relatives and that there is no liability on the part of a sister for such care and treatment of her sister. Section 6650 further provides that "the estate of such mentally ill person ... shall be liable for his care, support, and maintenance in a state institution ..." It is the contention of the department that regardless of source, the estate of a mentally ill person within the meaning of section 6650 includes his beneficiary interest in a trust for his benefit, and that Molly had such interest here.
 In the file of the Department of Mental Hygiene was found *507 an interdepartmental memorandum dated June 11, 1943, in which the secretary of the medical director of Stockton State Hospital stated that Jennie had sent a check for $20 for Molly's care for the coming month, [fn. 1] that "No board account was ever established for the case and Mrs. Johnson is not legally responsible for her sister's care." Then follows a statement to the effect that the writer understands that Mrs. Johnson's reason for sending the check is that she "has assumed that she should now pay for the patient for the reason that she [Molly] can no longer work to earn her way." The writer recommended returning Mrs. Johnson's check. The record fails to show whether or not the check was returned.
 Respondent contends that this memorandum, and the fact that no prior letter from the department is in the file (there was no evidence that the file was complete nor any testimony as to whether a prior letter had or had not been sent) proves that the statement in the department's letter to Mrs. Johnson of October 29, 1952, "You will remember, of course, our letter advising you of your responsibility," etc., was in error, and that, therefore, Mrs. Johnson's payments were entirely voluntary and through no feeling of legal responsibility. Whether or not a prior letter was sent is immaterial. When Mrs. Johnson made her will on May 28, 1956, she could have been under the impression given her in the department's letter of October 29, 1952, that she was legally responsible for Molly's care. At any rate, whether under that impression or not, it is clear from her will that she wanted payments from her trust to be limited to "the neighborhood of Twenty- five Dollars ($25) a month together with clothing." Without such a construction of the will the words, "In determining the amounts to be paid, the Trustee shall take into consideration the fact that my payments during my lifetime," etc., must be completely ignored.
 In Estate of Lackmann (1958) 156 Cal.App.2d 674 [320 P.2d 186], the testatrix whose son George was a patient at the Mendocino State Hospital, stated in her will, " 'I desire that my trustee provide, out of the income of my properties, or if the income should be inadequate, out of the proceeds from the sale of the corpus of the trust, for the proper care, support and maintenance of my son, George Lackmann, and I vest in my said trustee complete and absolute discretion as *508 to how much he should expend from the trust funds for the proper care, support and maintenance of my said son; but I direct and instruct my said trustee to be guided in determining the amount to be expended for such purposes by my desire that, as nearly as is practicable under the circumstances, the amount thus expended shall not exceed one-third of the net income of my said properties as computed by my trustee.' " (P. 680.) The trustee refused to make any payment to the Department of Mental Hygiene for George's care. This court held: "It is clear from the will that the testator's primary desire in the creation of the trust was that George receive proper care and while the trustee was given complete and absolute discretion in determining how or in what manner that care was obtained, his discretion was necessarily limited to there being care supplied and to its being proper. ... In view of the fact that George is mentally ill, proper care can best (and less expensively) be given at a state hospital. Therefore, the trustee is required to pay from the trust income, or corpus if the income is not adequate, the reasonable cost of that care." (Pp. 680- 681, 682.)
 We held in that case that the direction that the "trustee ... be guided in determining the amount to be expended for such purposes by my desire that, as nearly as is practicable under the circumstances, the amount thus expended shall not exceed one-third of the net income" was controlled by the limitation "practicable under the circumstances." (P. 680.) Hence, "If that cost should exceed one-third of the net income then the one-third limitation is not, in the words of the will, 'practicable under the circumstances.' " (P. 682.) [1a] While the limitation of the one-third in Lackmann is thus controlled and not effective, the limitation to the $25 in the instant case is not controlled and is effective.
 Moreover, the Lackmann case differs from the instant one in another respect. There the mother was one of the persons liable under section 6650 for her son's care, a circumstance to be considered in the interpretation of her will. In her will, as we there said, it was her desire that he be given proper care and that the discretion of the trustee be limited by the requirement that he be given proper care. In our case, however, there was no liability on the part of Jennie to pay for Molly's care, and in her will Jennie expressly showed that in taking care of Molly the trustee was to exercise his discretion, limited, however, to approximately the amounts which she had been spending for Molly--$25 and cost of clothing. *509
 Estate of Yturburru (1901) 134 Cal. 567 [66 P. 729], upheld the constitutionality of the law making the guardian of the estate of an insane person, where the latter's estate is sufficient, responsible for his maintenance at a state hospital.
 [2] A beneficiary of a trust established for his care has an "interest derived from his own equitable estate in the property of the testamentary trust." (Title Ins. & Trust Co. v. Duffil (1923) 191 Cal. 629, 646 [218 P. 14].) [1b] What, then, is the beneficial interest of Molly in this trust? It is not an interest for the entire cost of her care. The testatrix expressly limited the interest in providing, not that the entire cost of her care be paid but only that the trustee pay such portion of her care as in its sole discretion it might deem necessary, taking into consideration the fact that testatrix had paid "in the neighborhood of Twenty-five Dollars ($25) a month together with clothing." Jennie was under no obligation to provide anything for Molly's care, and, hence, when she decided to do something in that respect, she had the right to limit it in any way she desired.
 The trustee had no right under the terms of the trust to refuse to pay anything to the department for Molly's care. Under the will it must pay the department $25 per month and pay for her clothing. How much above $25 "in the neighborhood" of that sum the trustee might pay is a matter entirely in its discretion. It could not be a substantially greater sum as it would not then be "in the neighborhood" of the amount mentioned by the testatrix. Molly's trust estate, which under section 6650 is liable for her care, is subject to the $25 limitation expressed in the will.
 Estate of Hinkley (1961) 195 Cal.App.2d 164 [15 Cal.Rptr. 570], is applicable here. There, as here, there was a sibling relationship between the trustor and the beneficiary who was confined in a state hospital. The trust provided for payment by the trustee of $40 per month to the brother and the right to occupy the testatrix' home. In the event of the brother's illness the trustee in his uncontrolled discretion might pay from principal such amount as he deemed necessary. The Department of Mental Hygiene contended, as here, that the trustee must pay the entire cost of care of the beneficiary at the state hospital. The court, after pointing out that the testatrix, the sister, was not legally liable for the brother's care, held that it was clear from the will that she did not intend to provide for the full support of the brother. "The provision in the will giving the trustee discretionary *510 power was intended, of course, to have some meaning. The trustee had the duty under the provisions of the will (trust) to exercise his discretion. ... Since it is clear that the sister did not intend to provide for the full support of the brother, and since she was not liable under a statutory provision for his support, and since the trustee exercised his discretion reasonably, it seems clear that the trustee in exercising his discretion acted in the state of mind contemplated by the sister and that he performed his obligation as a trustee as required by the trust instrument." (Pp. 170-171.)
 [3, 4] Under a discretionary trust the beneficiary has at most a mere expectancy (Estate of Canfield (1947) 80 Cal.App.2d 443, 451 [181 P.2d 732]; Bogert, Trusts, 226; Estate of Marre (1941) 18 Cal.2d 184, 190 [114 P.2d 586]), and not until the trustee exercises its discretion over and above the $25 limitation does Molly have any right to such excess.
 The trustee took the position in the trial court that the trust estate could be liable in no event for Molly's care from the date of Molly's death until the date of the distribution of the estate to the trustee, but was willing to pay $25 per month and furnish clothing, from the later date on. At oral argument the trustee conceded that it is obligated to pay for Molly's care as provided in the will from the date of Mrs. Johnson's death on.
 That portion of the "Order Approving Report of Referee and Instructing Trustee" reading as follows, "And It Is Hereby Further Ordered that the Trustee Wells Fargo Bank & American Trust Company be, and it hereby is, instructed to make payment to the Department of Mental Hygiene of the State of California for care of Molly Watkins as follows: For the period from August 20, 1958, to December 31, 1959, the sum of $2815.35, computed on the basis of a charge at the rate of $156 per month; For the months of January to August, 1960, the sum of $183 per month, or a total of $1,464; and For the months commencing with September, 1960, and for each successive month until further order of court, the sum of $200 per month" is reversed and said portion of the order is amended to read as follows: "And It Is Hereby Further Ordered that the Trustee, Wells Fargo Bank & American Trust Company be, and it hereby is, instructed to make payment to the Department of Mental Hygiene of the State of California for care of Molly Watkins from the date of death of Mrs. Jennie W. Johnson, such sum per month as the Trustee in its discretion may determine, *511 not less, however, than the sum of $25 per month, such payments to continue during the lifetime of said Molly Watkins, or until exhaustion of the trust estate; and said Trustee is further instructed to provide such clothing for said Molly Watkins as it in its discretion may determine necessary." In all other respects said order is affirmed. Costs of this appeal shall be paid out of the assets of the trust estate.
 Tobriner, J., and Sullivan, J., concurred.
NOTES
[fn. 1] 1. Jennie's letter of July 31, 1952, contained a check for $25 and a statement that she would pay $25 per month thereafter.